

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00069-CR
_____

THE STATE OF TEXAS, Appellant

V.

LISA LOU RITTER, Appellee

On Appeal from the 123rd District Court
Panola County, Texas
Trial Court No. 2005-C-0287

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

O P I N I O N

On July 19, 2005, Lisa Lou Ritter was indicted by a Panola County grand jury for securing execution of a document by deception. Ritter was arrested and posted bond on July 20, 2005. Over the ensuing eleven and one-half years, there was scant activity in the case until Ritter's third appointed attorney filed a motion to dismiss the indictment asserting a violation of her right to a speedy trial. After a hearing, the trial court granted Ritter's motion and dismissed the indictment with prejudice. On appeal, the State contends that the trial court erred in finding a speedy trial violation and in dismissing the indictment. Finding no error by the trial court, we will affirm its order.

I.      **Background**

The record shows that Ritter was indicted on July 19, 2005, and posted bond on July 20, 2005. At a November 30, 2005, docket call, the State announced ready, but there is no indication whether Ritter was present. Thereafter, there was no activity in the case until September 23, 2009, when Ritter failed to appear when the case was called at docket call, her bond was forfeited, and a capias was issued. Ritter testified that in October 2009, she called the court's office and was told that if she came in, she would be appointed an attorney. On October 8, 2009, the trial court appointed Laura Carpenter to represent Ritter. The parties agreed to pass the case on October 14, 2009. According to the trial court's docket, the case was set to plea on August 20, 2010, but this apparently did not occur. On September 1, 2010, Ritter filed a motion to continue a September 7, 2010, setting because her attorney was suffering from pneumonia.

The next activity in the case occurred on June 10, 2015, when Attorney Carpenter filed a motion to withdraw based on her inability to effectively communicate with Ritter and her upcoming employment with the Harrison County District Attorney's Office. On June 30, 2015, the trial court granted the motion to withdraw and appointed Robert Goodwin to represent Ritter. Ritter failed to appear in court on January 29, 2016, her bond was forfeited, and a capias was issued. On December 2, 2016, the trial court appointed Clay Thomas to represent Ritter.[1]

On January 23, 2017, Ritter's new counsel filed her motion to dismiss the indictment asserting violations of her right to a speedy trial as guaranteed by the United States and Texas Constitutions and the ineffectiveness of her prior counsel in their representation of her. In conjunction with the motion to dismiss, Ritter requested a hearing to be set on her motion, which was held on February 28, 2017.

At the hearing, Ritter testified that in the five and one-half years attorney Carpenter represented her, Ritter never met with Carpenter in person and that they had only two telephone conversations. Ritter testified that she told Carpenter she wanted the case resolved and that Carpenter told her, "We'll get it taken care of." She also testified that she met with attorney Goodwin only one time, on the day he was appointed. Without knowing anything about her case, he advised Ritter to take a plea deal, which she refused. During the next year and one-half of his representation, she never saw Goodwin again. When asked whether she had asked either of her first two attorneys to file a motion for a speedy trial, she responded that she did not know what that was and that she just wanted to get the case over.

---

[1]The record does not reflect a motion to withdraw by, or an order granting withdrawal to, attorney Goodwin.

The only other rationale for the delay came from Danny Buck Davidson, the Panola County District Attorney, in response to questioning by the trial court. After noting the considerable time between the indictment and the appointment of an attorney in 2009 and the period from that appointment until the present, the trial court asked Davidson to give it his best three reasons why the case should not be dismissed. Davidson responded,

> I have cases older than that. It's a state jail felony case. I visited with both of her prior attorneys. I made them offers of probation.
>
> State jail felonies are not a high priority case when I have the number of cases that I have. I like to try -- I don't want to waste people's time when I have first degrees, second degrees that people are saying they want a trial.
>
> I did not ever talk to her. . . . [S]o what I'm saying is I have to rely on her attorney that is appointed by learned judges. I talk to the attorneys. I don't talk to her.
>
> I made Ms. Carpenter an offer, a plea bargain. I made Mr. Goodwin about three different offers. And I have made [Mr. Thomas] a minimum of a deferred probation of the minimum sentence.

## II.     Standard of Review

"The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a speedy trial to an accused." *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (citing U.S. CONST. amend VI). Further, Article I, Section 10, of the Texas Constitution guarantees an accused the right to a speedy trial. TEX. CONST. art. I, § 10. Claims of a denial of the right to a speedy trial under both the federal and state Constitutions are analyzed by Texas courts using factors established by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. 2002). Under *Barker*, we consider "(1) the length of delay, (2) the State's reason for the delay,

4

(3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay." *Gonzales*, 435 S.W.3d at 808 (citing *Barker*, 407 U.S. at 530). If the defendant makes "a threshold showing that the interval between accusation and trial is "presumptively prejudicial," then a court must consider each of the remaining *Barker* factors and weigh them. *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016) (citing *State v. Munoz*, 991 S.W.2d 818, 821–22 (Tex. Crim. App. 1999)). When balancing the *Barker* factors, the conduct of both the State and the defendant are considered. *Barker*, 407 U.S. at 530.

In our review of the trial court's application of the *Barker* factors, "we give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings." *Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016) (citing *Gonzales*, 435 S.W.3d at 808–09). However, we review legal questions de novo, including whether there was presumptive prejudice to proceed to the *Barker* analysis and the weighing of the *Barker* factors. *Gonzales*, 435 S.W.3d at 809. Since Ritter prevailed on her speedy trial claim, we presume the trial court resolved any disputed fact issues in her favor. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). In addition, we defer to any implied findings of fact that are supported by the record. *Id.* In our deliberation, we do not consider evidence and arguments that were not before the trial court at the time of its ruling. *Gonzales*, 435 S.W.3d at 809; *see Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

5

### III. Analysis

#### A. Presumptive Prejudice and Length of Delay

The length of delay begins when the accused is arrested or formally accused. *Gonzales*, 435 S.W.3d at 809 (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)). Generally, a delay approaching one year will trigger a *Barker* analysis. *Balderas*, 517 S.W.3d at 768 (citing *Dragoo*, 96 S.W.3d at 314). When the delay goes well beyond this bare minimum, the length of the delay weighs against the State. *Gonzales*, 435 S.W.3d at 809 (citing *Zamorano*, 84 S.W.3d at 649). Further, since "the presumption that pretrial delay has prejudiced the accused intensifies over time," when the delay is lengthened, the prejudice to the defendant is compounded. *Id.* (quoting *Zamorano*, 84 S.W.3d at 649; *Doggett v. United States*, 505 U.S. 647, 652 (1992)).

In this case, Ritter was indicted in July 2005, and the hearing on her motion to dismiss was in February 2017, an interval of well over eleven years. That delay is sufficient to trigger a *Barker* inquiry. Further, since the delay stretched well beyond the minimum needed to trigger the inquiry, this factor weighs heavily in favor of finding a violation of Ritter's right to a speedy trial. *See Balderas*, 517 S.W.3d at 768 (delay of over eight years weighed heavily in favor of a finding of a speedy trial violation); *Dragoo*, 96 S.W.3d at 314–15 (delay of three and one-half years weighed heavily in favor of a finding of a speedy trial violation).

#### B. The State's Reasons for the Delay

When analyzing the State's reasons for the delay, different weights are assigned to different reasons. *Balderas*, 517 S.W.3d at 768 (citing *Dragoo*, 96 S.W.3d at 314). Deliberate delay by the State in order to hamper the defense will weigh heavily against the State, while more neutral

reasons, such as negligence or crowded court dockets, will weigh less heavily against it. *Balderas*, 517 S.W.3d at 768; *Gonzales*, 435 S.W.3d at 809–10. On the other hand, justifiable reasons, such as locating a witness, will not count toward the delay. *Gonzales*, 435 S.W.3d at 810. In addition, delay caused by the defendant or her counsel will weigh against her. *Balderas*, 517 S.W.3d at 768.

In this case, there were four years and two months between the indictment and arrest of Ritter and the appointment of her first counsel in which there was essentially no activity. The State's proffered reason for this delay was that the case, being a state jail felony, was not important enough to pursue. This period of delay weighs against the State and in favor of a finding of a speedy-trial-right violation. During the first year of attorney Carpenter's representation, there were two times when the case was passed, a case setting for a plea that did not occur, and one more setting that was passed pursuant to a motion for continuance based on Carpenter's illness. The district attorney testified that he made one plea offer to attorney Carpenter, which apparently was during that time period. Since there was one setting for a plea during that period, the trial court could have reasonably inferred that such plea offer was made during that time period. Because this delay was either justified because of good faith plea negotiations, or the result of the actions of both the State and Ritter, we find that this period of delay does not weigh against either party. During the next four years and nine months of Carpenter's representation of Ritter, there was again no activity in the case. Again, the State's only proffered reason was the relative unimportance of the case. This period also weighs against the State. Attorney Goodwin represented Ritter for one year and five months. During that time, the case was called once, at which docket call Ritter did not appear. Although Ritter testified that she only spoke to Goodwin one time (on the day he was

7

appointed), the record is silent as to whether Ritter had notice of the docket call. We find the seven-month period from Goodwin's appointment until the docket call weighs against Ritter. For the next ten months, until the appointment of attorney Thomas, there is another period of inactivity. The district attorney said that he made three plea offers to attorney Goodwin during his representation. However, he did not provide any reason regarding when those offers were made, nor did he supply an answer regarding and response to those offers. In addition, there is no other evidence in the record indicating that there were ongoing plea negotiations during this ten-month period. Therefore, the trial court could have discounted those statements as evidence of ongoing plea negotiations. We find this ten-month period also weighs against the State. After attorney Thomas was appointed to represent Ritter, the district attorney said he made one plea offer to Thomas, which Thomas did not dispute. About one and one-half months after his appointment, Thomas filed Ritter's motion to dismiss and set it for hearing. We find that the time period after Thomas' appointment does not weigh against either party.

The total delay attributed to the inaction of the State is a period of nine years and nine months. The State's only reason for this delay was the relative unimportance of the case. This lack of diligence by the State constitutes negligence that compounded Ritter's presumptive prejudice over this time period. *See Gonzales*, 435 S.W.3d at 810 (citing *Doggett*, 505 U.S. at 652, 656). Therefore, we find that this factor weighs heavily in favor of a finding of a speedy-trial-right violation. *Id.*

8

## C. Ritter's Assertion of Her Right to a Speedy Trial

Since "'[w]hether and how a defendant asserts his right [to a speedy trial] is closely related to the other factors," this factor "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531–32. "[A] failure to assert the right makes it difficult for a defendant to prove that he was denied a speedy trial." *Zamorano*, 84 S.W.3d at 651 (citing *Barker*, 407 U.S. at 532). In some cases, the lack of a timely demand for a speedy trial will indicate that the defendant "did not really want one." *Balderas*, 517 S.W.3d at 771 (citing *Dragoo*, 96 S.W.3d at 314). *But cf. Gonzales*, 435 S.W.3d at 804, 811–12 (defendant who filed motion to dismiss when arrested six years after indictment found to have timely asserted his speedy trial rights). This is because "[t]he longer the delay becomes, 'the more likely a defendant who wished a speedy trial would be to take some action to obtain it.'" *Balderas*, 517 S.W.3d at 771 (citing *Dragoo*, 96 S.W.3d at 314). However, the defendant's inaction may be mitigated when the competency of the defendant's attorney is challenged for failing to assert her speedy trial rights. *See Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003); *Dragoo*, 96 S.W.3d at 314–15. In some cases, filing for a dismissal, instead of asking for a speedy trial, will weaken a speedy trial claim because it shows a desire to not go to trial at all. *Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008). Conversely, "the defendant has no duty to bring himself to trial; that is the State's duty." *Zamorano*, 84 S.W.3d at 651 (citing *Barker*, 407 U.S. at 527).

In this case, Ritter did not assert her right to a speedy trial until eleven and one-half years after her indictment. However, in her motion and her argument to the trial court, she asserted that her failure to assert it earlier was due to the negligence of her prior two appointed attorneys. The

9

record tends to support this claim. It is difficult to imagine a valid trial strategy that would justify attorney Carpenter not asserting Ritter's right to a speedy trial when there had been no activity in the case for over four years prior to her appointment, or during the last four years and nine months of her representation. The same can be said of attorney Goodwin, who was appointed to represent Ritter in a case that had languished for almost ten years without any substantial activity. When asked if she had ever asked her two prior attorneys to file a motion for a speedy trial, Ritter responded that she did not know what one was. Further, Ritter testified that over the course of their representation of her, she had very little communication with them. She also testified that when she talked with Carpenter, Ritter told her that she wanted the case resolved, and Carpenter assured her it would be. After Thomas was appointed, he asserted her right to a speedy trial with reasonable promptness and immediately sought a hearing. From this evidence, the trial court could reasonably infer that Ritter had not been aware of her right to a speedy trial until Thomas was appointed to represent her and that she asserted her rights as soon as she was made aware of them. Alternatively, the trial court could have reasonably found that Ritter's tardy assertion of her rights was mitigated by the negligence of her prior counsel. In addition, considering the delay of over eleven years, and the presumptively compounded prejudice to Ritter, the trial court could have reasonably concluded that requesting a dismissal of the indictment, rather than a trial, did not necessarily indicate that Ritter never wanted a trial. *See Gonzales*, 435 S.W.3d at 811–12.

We also note that in the over eleven years before Thomas was appointed to represent Ritter, this case had only been called five times. The first two times Ritter was unrepresented and only one of those times does the record show that she did not appear. Another time, Ritter agreed to a

pass six days after Carpenter's appointment. She also obtained a continuance from another setting based on Carpenter's illness. At the one setting during Goodwin's representation, she did not appear, although no explanation for her absence appears in the record. Thus, this is not a case where the evidence shows that the defendant actively sought to delay the trial and only asserted her speedy trial rights on the eve of trial. *See, e.g.*, *Balderas*, 517 S.W.3d at 771. Rather, once Thomas was appointed, she asserted her right promptly and immediately sought a hearing. Under these facts, we find this factor weighs in Ritter's favor. *See Zamorano*, 84 S.W.3d at 651–52.

### D. Prejudice to Ritter Because of the Length of the Delay

In analyzing prejudice, we examine the three interests the right to a speedy trial was intended to protect: (1) "to prevent oppressive pretrial incarceration," (2) "to minimize anxiety and concern of the accused," and (3) "to limit the possibility that the defense will be impaired." *Gonzales*, 435 S.W.3d at 812 (quoting *Barker*, 407 U.S. at 532). "The last interest is the most important because the fairness of the entire criminal-justice system is distorted when a defendant is unable to adequately prepare his defense." *Id.* (citing *Barker*, 407 U.S. at 532). Since Ritter was not incarcerated and there was no evidence of anxiety and concern, we limit our analysis to the third factor.

Generally, "[a] defendant has the burden to make some showing of prejudice, but a showing of actual prejudice is not required." *Balderas*, 517 S.W.3d at 772 (citing *Munoz*, 991 S.W.2d at 826). Further "[e]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Id.* (citing *Shaw*, 117 S.W.3d at 890). "In such instances, the defendant is absolved from the requirement to demonstrate prejudice." *Gonzales*,

11

435 S.W.3d at 812 (citing *Doggett*, 505 U.S. at 655–56). A delay of six years caused by the State's negligence has been found to absolve the defendant from demonstrating prejudice. *See Doggett*, 505 U.S. at 655–57; *Gonzales*, 435 S.W.3d at 813–15. In these instances, the reviewing court presumes that the lengthy delay adversely affected the defendant's ability to defend herself. *Balderas*, 517 S.W.3d at 772 (citing *Shaw*, 117 S.W.3d at 890). The burden then shifts to the State to rebut the presumption of prejudice by showing that the defendant has acquiesced to the delay. *Gonzales*, 435 S.W.3d at 815.

In this case, at the hearing, the State did not attempt to show Ritter's acquiescence to the delay, nor has it argued that she acquiesced to the delay in its brief. As discussed above, the record and testimony show that the State failed to pursue this case because it considered it unimportant. It also shows that Ritter's first two attorneys did nothing to assert her right to a speedy trial, or to prepare for her defense in any way. Since the State has failed to rebut the presumption of prejudice and the record does not show an acquiescence attributable to Ritter, we find that this factor weighs in favor of a finding of a speedy trial violation.

### E. Balancing the Factors

The length of the delay caused by the State was well over nine years. This excessive delay was caused by the State's lack of interest in prosecuting this matter. Further, Ritter promptly asserted her right to a speedy trial once she was represented by capable counsel. The length of the delay, which was over nine times the delay considered sufficient to trigger judicial review, presumptively compromised both the reliability of any trial and Ritter's ability to defend herself. This presumption was not rebutted by the State. Each of these factors weighs in favor of finding a

12

speedy trial violation. Further, "[e]ven if [Ritter]'s actual prejudice was minimal, '[c]ondoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority.'" *Zamorano*, 84 S.W.3d at 655 (quoting *Doggett*, 505 U.S. at 657). Therefore, we find that the trial court did not err in finding a speedy trial violation and dismissing the indictment. We overrule the State's sole issue.

For the reasons stated, we affirm the judgment of the trial court.


Bailey C. Moseley
Justice


Date Submitted:        September 27, 2017
Date Decided:          September 28, 2017

Publish