COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| RAQUEL GONZALEZ, | § | |
| | | No. 08-16-00286-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law Number One |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20090C09254) |
| | § | |

## **O P I N I O N**

Raquel Gonzalez appeals her conviction for one count of driving while intoxicated, Class B misdemeanor, in which her case was sentenced along with a companion case.[1] Pursuant to a plea bargain, Gonzalez waived her right to a jury trial, entered a plea of guilty, and received a punishment of three days' confinement in the county jail. With her plea, Gonzalez reserved her right to appeal the trial court's denial of her motion to dismiss for violation of her constitutional right to a speedy trial. Gonzalez's motion asserted that her misdemeanor case was delayed for more than six years from the date of her arrest to the date of its filing. Having completed the trial court's Mental Health Court Program, Gonzalez believed the charge against her had long been

---

[1] Gonzalez separately appeals the trial court's judgment in her companion case which was sentenced concurrently with this case. The companion case was assigned appellate cause number 08-16-00287-CR and trial court number 20090C08960. We issue separate opinions as to each case.

dismissed when she received a setting for a mandatory status conference. We reverse Appellant's conviction and render judgment dismissing the DWI case.

## FACTUAL SUMMARY

In August of 2009, Raquel Gonzalez was charged by information with driving while intoxicated (DWI), second offense, and her case was assigned to County Court at Law Number Seven. After five months, Gonzalez agreed to participate in a Mental Health Court Program attached to County Court at Law Number One, and her case was transferred to that court's docket. Gonzalez described that she had been diagnosed with depression and epilepsy. After participating for six months to a year, Gonzalez was advised by a court employee that her misdemeanor case had been dismissed and she had completed the program. From that point forward, nothing happened on her case for several years until the trial court set a mandatory status conference for July 28, 2015.

On September 4, 2015, Gonzalez filed a motion to dismiss due to lack of speedy trial. In her motion, Gonzalez claimed she had been advised that her charges would be dismissed if she complied with all conditions of the Mental Health Court Program. Gonzalez asserted she complied with the terms of the program. She also asserted that her right to a speedy trial had been violated as the allegations against her were then six years old. At the hearing, Gonzalez and her husband both testified about her completion of the Mental Health Court Program. She also described having been informed by a member of the court's staff that her charges would be dismissed if she complied with all conditions of the program. The State presented no rebuttal witnesses.

2

Ruling from the bench, the trial court denied the motion and accepted blame in large part for the fact that Gonzalez's case lingered on the court's docket for several years. Rather than blame the State, the court faulted Gonzalez's previous attorney for not demanding a trial at the same time he filed her motion to dismiss for violating her speedy trial rights. Shortly thereafter, on October 4, 2016, Gonzalez waived her right to a jury trial and pled guilty to a Class B misdemeanor offense of DWI pursuant to a plea bargain. Consistent with the agreement, the trial court imposed a sentence of three-days incarceration in the county jail. Gonzalez preserved her right to appeal the court's pretrial ruling and this appeal followed.

## SPEEDY TRIAL CLAIM

In her sole issue on appeal, Gonzalez broadly asserts that the trial court erred in denying her motion to dismiss for lack of speedy trial[2] of the DWI charge against her that remained unresolved for a total of seven years from the date of her initial arrest.

### Applicable Law and Standard of Review

The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment. U.S. CONST. amend. VI and XIV; *Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972); *Henson v. State*, 407 S.W.3d 764, 766 (Tex. Crim. App. 2013). The Texas Constitution provides similar protection coextensive with the federal protection. TEX. CONST. art. I, § 10; *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). The right protects a defendant from "oppressive pretrial incarceration, mitigates the anxiety and concern accompanying public

---

[2] Other than her constitutional claim, Gonzalez raises no statutory right or other bases to support dismissal of her misdemeanor case. Thus, we limit our opinion to her asserted claim.

3

accusations, and ensures that the defendant can mount a defense." *Henson*, 407 S.W.3d at 766 (citing *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193). The right attaches once a person becomes an "accused," or in other words, once he or she is arrested or charged with an offense. *Cantu v. State,* 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *United States v. Marion,* 404 U.S. 307, 321, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

A speedy trial claim balances four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) any prejudice to the defendant resulting from the delay. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192) (setting out four factors). Before engaging in a full analysis, the accused must first make a threshold showing of a presumptively prejudicial delay, or failure to prosecute with "customary promptness." *Id*. at 808. Presumptive prejudice "simply marks the point at which courts deem the delay unreasonable enough to trigger further enquiry." *Id*. (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520 (1992)). Depending on the nature of the charges, delays of eight months or longer are considered presumptively unreasonable and sufficient to trigger a full analysis. *Doggett*, 505 U.S. at 652 n.1, 112 S.Ct. at 2691; *Harris v. State,* 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

We apply a bifurcated standard of review to a speedy trial claim. *Zamorano*, 84 S.W.3d at 648; *see also Palacios v. State*, 225 S.W.3d 162, 167 (Tex. App.—El Paso 2005, pet. ref'd). Review of *Barker* factors necessarily involves fact determinations and legal conclusions. *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). We review the trial court's decision under an abuse of discretion standard for the factual components, and a *de novo* standard

4

for the legal components. *Id*.; *Palacios,* 225 S.W.3d at 167. A court's overall consideration of the balancing test is a purely legal question. *Johnson*, 954 S.W.2d at 771.

Following the course of Gonzalez's argument, we start with the first *Barker* factor, the length of the delay.

*Length of the Delay*

The right to a speedy trial attaches when a person becomes an accused, or, in other words, when she is arrested or charged. *Henson*, 407 S.W.3d at 767 (citing *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971)). Gonzalez was arrested on August 23, 2009, and the next day she was charged by information with one count of DWI-second offense. Seven years later, on October 4, 2016, her case was finally resolved when she entered a plea of guilty. On appeal, the parties agree that the delay of approximately seven years was presumptively prejudicial and sufficient to trigger the remainder of the *Barker* analysis.

On review, we agree with the parties' assessment that a delay of this length establishes a presumptive prejudice triggering a full analysis. *See Doggett*, 505 U.S. at 652 n.1, 112 S.Ct. at 2691 n.1 (noting that courts "have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year"); *Cantu*, 253 S.W.3d at 281 ("There is no set time element that triggers the analysis, but we have held that a delay of four months is not sufficient while a seventeen-month delay is."). Having found a presumptive prejudicial delay, we further find that a delay of this length weighs heavily in favor of Gonzalez and against the State. *See Zamorano*, 84 S.W.3d at 649 (four-year delay in case involving charges of DWI weighed heavily in the defendant's favor and against the State); *see also Palacios,* 225 S.W.3d at 167 (two-year delay in felony injury-to-a-child case weighed heavily in defendant's favor).

5

*Reason for Delay*

Once it has been determined that a presumptively prejudicial delay has occurred, the State bears the initial burden of providing a justification for the delay. *Cantu*, 253 S.W.3d at 280; *State v. Howard*, No. 08-12-00206-CR, 2013 WL 3943121, at *2 (Tex. App.—El Paso July 31, 2013, no pet.) (not designated for publication) (citing *Emery v. State,* 881 S.W.2d 702, 708 (Tex. Crim. App. 1994)). Different reasons for a delay are assigned different weight: an intentional delay by the prosecutor for tactical reasons is weighed heavily against the State; a more neutral reason, such as negligence or overcrowded courts, is weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant; a valid reason for a delay, such as a missing witness, should serve to justify appropriate delay. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. When the State offers no reason for the delay, this factor will also weigh against the State, but not as heavily as when deliberate delay is proven. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). Delays attributable to the defendant are weighed against the defendant and may in some instances constitute a waiver of the defendant's speedy trial rights. *State v. Munoz,* 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (en banc).

Keeping these principles in mind, we segment the events associated with Gonzalez's case starting with her arrest in August of 2009 through her plea of guilty in October of 2016. Here, we find that the reasons for the delay vary chiefly with respect to what occurred before and after her case was transferred to the Mental Health Court Program.

**From Arrest to Transfer to the Mental Health Court Program**

Following her arrest in August of 2009, Gonzalez's case initially proceeded on a normal course. She appeared before a magistrate the day after her arrest and requested appointed counsel. Thereafter, her case was assigned to County Court at Law Number Seven, and she appeared for an arraignment/pretrial on September 15, 2009. On December 17, 2009, the trial court set a jury trial for March 17, 2010. In the interim, the State made two plea offers, the last of which remained valid throughout the pendency of her case.

A month before trial, on February 9, 2010, her case was transferred to the Mental Health Court Program of County Court at Law Number One. At the dismissal hearing, Gonzalez testified that two of her physicians, Dr. Levine and Dr. Vanderpool, had diagnosed her with depression and epilepsy which presumably qualified her for eligibility. While testifying, Gonzalez described the court's program as requiring her to attend therapy, to take medication, to meet with a psychiatrist, and to look for work through a "DARS program."

Although neither party presented further information regarding the nature of the program, its procedures, or its rules, we note generally that Chapter 125 of the Government Code allows a county's commissioners court to establish a mental health court program for persons who have been arrested for or charged with a misdemeanor and are suspected by a law enforcement agency or a court of having a mental illness. TEX. GOV'T CODE ANN. § 125.002. Pursuant to the Government Code, a mental health court program must contain certain "essential characteristics," including the early identification and prompt placement of eligible participants in the program, the "integration of mental illness treatment services . . . in the processing of cases in the judicial system," the "use of a nonadversarial approach involving prosecutors and defense attorneys to

7

promote public safety and to protect the due process rights of program participants," and ongoing judicial interaction with the participants. *Id*. § 125.001(1)(2)(3) and (5). A qualifying program must provide participants with mental health services, to include a "court-ordered individualized treatment plan indicating the services that will be provided to the participant[.]" *Id*. § 125.003(a)(2)(D). The stated goal of the program is "diversion of potentially mentally ill. . . defendants to needed services as an alternative to subjecting those defendants to the criminal justice system[.]" *See id*. § 125.001(6). Once established, such programs must allow eligible individuals to "choose whether to proceed through the mental health court program or proceed through the regular criminal justice system[.]" *Id*. § 125.003(a)(2)(B). A participant may withdraw from the program at any time before a trial on the merits has been initiated. *Id*. § 125.003(a)(2)(C).

Gonzalez described the length of the program as being approximately six months, but in no event no longer than a year. Her husband testified he took her to required appointments for a period lasting close to twelve months. While in the program, Gonzalez also described that she attended status conferences in court at least through June of 2010. While in court, Gonzalez described that she met with her lawyer, signed some papers, and would generally speak with a person she remembered as "Mr. Prieto." She testified she complied with all requirements of the program while she participated. At the end of the program, she understood her case had been dismissed from a conversation she had with Mr. Prieto.

Both sides agree that the period of delay during which Gonzalez was participating in the program was justifiable and should not be held against the State. We agree with this assessment. Because the State presented no rebuttal evidence about the program itself, or more specifically,

8

about Gonzalez's length of participation, the State concedes that we must rely on Gonzalez's testimony to determine the program's length.[3]

We must construe the evidence in the light most favorable to the trial court's decision, and therefore, we conclude that Gonzalez actively participated in the program for a year, thereby expanding the justifiable period of delay from February of 2010 until February of 2011. *See Zamorano*, 84 S.W.3d at 648 (appellate courts must construe evidence in the light most favorable to the trial court's ruling). Accordingly, because the record indicates that Gonzalez's case progressed in an ordinary manner both before she entered the Mental Health Court Program and while she participated in its services, we assign a neutral weight to the period from August 2009 to her completion of the program in February 2011.

### Period After Completion of the Mental Health Court Program

After the program ended, Gonzalez's case deviated from the ordinary course of proceedings to the extent that it was neither dismissed based on completion of program conditions nor otherwise returned to the court's active docket. Thus, this brings us to our discussion of the longest and most critical period of delay from March 2011 to entry of a plea in October 2016. Because this period can be divided into a lengthy segment of dormancy followed by a short period of activity, we will address each of those segments separately.

---

[3] We note that the relevant statute pertaining to mental health courts in Texas provides that when a county commissioners court establishes a mental health court, it must ensure that the jurisdiction of the mental health court extends at least six months, but that it does not extend beyond the probationary period for the offense charged if the probationary period is longer than six months. TEX. GOV'T CODE ANN. § 125.003(a)(2)(E).

**Period of Dormancy**

From the beginning of March 2011 to July 28, 2015, Gonzalez's case experienced a period of dormancy of duration of approximately four years and five months. Gonzalez asserts that the State bears full responsibility for this period arguing the State "retained the responsibility to prosecute her in a timely fashion." Responding, the State advances two principal arguments: (1) that Gonzalez bears responsibility for the delay "for putting her cases into the Mental-Health Court . . . for four years . . . acquiescing in what happened;" and (2) that the court itself bears responsibility for not bringing her case "back out of Mental-Health Court for four years[.]" We disagree with the State.

As a fundamental right, the speedy trial right imposes a "duty of the charging authority is to provide a prompt trial." *Dickey v. Florida*, 398 U.S. 30, 38, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26 (1970). Applying controlling federal constitutional precedent, the Texas Court of Criminal Appeals observed, "[t]he essential ingredient of the Sixth Amendment's speedy trial guarantee is 'orderly expedition and not mere speed.'" *Munoz*, 991 S.W.2d at 821 (citing *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459–60, 30 L.Ed.2d 468 (1971)) (describing the speedy trial guarantee as requiring the prosecution to move with the dispatch that is appropriate to an early and proper disposition of the charges). Prosecutorial delay is disfavored based on recognition that "[s]tale claims have never been favored by the law, and far less so in criminal cases." *Dickey*, 398 U.S. at 37, 90 S.Ct. at 1568–69. A defendant has no duty to bring herself to trial, *Barker*, 407 U.S. at 527, 92 S.Ct. at 2190 n.27, and only where a delay is attributable in whole or in part to the defendant may it constitute a waiver of a speedy trial claim. *Munoz*, 991 S.W.2d at 822 (citing *Barker*, 407 U.S. at 528-30, 92 S.Ct. at 2191-92).

10

Here, the record supports the court's implied ruling that Gonzalez herself was not at fault for a delay occurring after she successfully completed the court's mental health program. Gonzalez and her husband testified that they believed her case had been dismissed once she completed her requirements. The court expressly stated that it had "no doubt that [Gonzalez] was told what she said she was told," and expressed to her counsel that, "I feel for your client[.]" Gonzalez confirmed that her address remained the same throughout the pendency of her case. She testified she did not receive any communication from either the court, her attorney, the State, or law enforcement, and she had no reason to believe that charges remained pending until she received notice of a status conference years later.

Rather than attribute delay to Gonzalez, the court blamed the employee who had previously worked for the court—presumably Mr. Prieto—for promising Gonzalez that her case would be dismissed, noting that the employee had no authority to do so, and referring to the employee's representations as being "misdeeds" of the court. At the hearing, the court further clarified that Mr. Prieto no longer worked for the court. The State presented no rebuttal witnesses contradicting Gonzalez's understanding of the completion of the program. On review, we must defer to the court's factual determinations. *See Johnson*, 954 S.W.2d at 771.

For the time the case lingered without activity, the State argues it bears no responsibility despite its prosecutorial duty, and the entire fault lay with Gonzalez herself and with the court. First, as to Gonzalez, the State argues that she opted to place her case into the Mental Health Court Program pursuant to Section 125.003(a)(2)(B) of the Government Code. Section 125.003 provides that a mental health court program must allow a person, if eligible, to choose whether to proceed through that mental health court program or proceed through the regular criminal justice

11

system. TEX. GOV'T CODE ANN. § 125.003(a)(2)(B). Given the State's lack of objection to Gonzalez's qualification for the program, we agree with the State that Gonzalez exercised her choice to enter the program rather than proceed through the regular criminal justice system.

As the State points out, however, there is no statutory provision pertaining to dismissal of charges once a participant completes services. Citing to our sister court's holding in *Goebler v. State*, No. 11-11-00052-CR, 2012 WL 3640274 (Tex. App.—Eastland Aug. 23, 2012, no pet.) (mem. op., not designated for publication), the State argues it bears no responsibility for the time Gonzalez's case lingered after completion of services. We conclude, however, that *Goebler* is distinguishable.

In *Goebler*, a defendant who had been charged with a felony offense of driving while intoxicated failed to appear for his arraignment. *Id.*, at *1. Shortly after the court issued a warrant, the State learned that the defendant had voluntarily entered a rehabilitation facility in another city for treatment of alcohol dependency and bipolar disorder. *Id*. Thereafter, a period of two years elapsed before the trial court's administrator later received notice that the defendant had been released from treatment. *Id.*, at *1 n.2. After a trial date was set, the defendant filed a motion to dismiss on speedy trial grounds, but the trial court denied the motion. *Id.*, at *1. In affirming the trial court's decision, the Eastland Court of Appeals noted that the case "fell through the cracks," because no one—presumably the court administrator—initiated efforts to determine defendant's status during the two years that the case sat dormant, and the State shouldered no blame for the delay. *Id.*, at *2. The court found it significant that the defendant himself had initiated the delay due to his initial efforts to be excused from court appearances while he completed

12

rehabilitation.  *Id.*  Accordingly, in *Goebler* the court held that the "reason for the delay" factor did not weigh against the State.[4]  *Id.*

Distinguishable from Gonzalez, the defendant in *Goebler* not only entered a rehabilitation program outside the court's jurisdiction, without first contacting the court no less, but also failed to inform the court of termination of his treatment after his release.  *Id*., at *2.  Therefore, the trial court in *Goebler* rightfully blamed the defendant for delays that occurred after completion of rehabilitation.  Unlike *Goebler*, Gonzalez received treatment in a statutorily-created program operated by the trial court with the State's knowledge and direct participation.  A mental health court program includes ongoing judicial oversight and a nonadversarial team approach involving both prosecutors and defense counsel.  *See* TEX. GOV'T CODE ANN. § 125.001.  Importantly, Gonzalez was affirmatively misled by court staff into believing that the charges against her had been dismissed after successful completion of program conditions.  Given these distinctions, we are not persuaded by the State's reliance on *Goebler* that Gonzalez should be blamed for the time her case lingered after she completed program requirements.  Thus, we conclude the record supports the court's finding that Gonzalez herself bore no responsibility for the delay that occurred after she completed her program but before her status conference in July 2015.

Second, the State argues the trial court itself shouldered blame for the time the case lingered without activity after Gonzalez completed the program. Criticizing itself, the court noted that it had failed to adhere to its standard practice of regularly following up on cases on its docket.

---

[4] The Eastland Court further held that the defendant in that case was required to assert his speedy trial rights during the two-year period of delay, and that his failure to do so constituted an acquiescence in the delay that weakened his case because it showed "a desire for no trial rather than a speedy trial." *Id.*, at *3 (citing *Zamorano*, 84 S.W.3d at 651 n.40).  As explained below, we find no such acquiescence in Gonzalez's case.

13

Recently, our sister court of appeals addressed a similar scenario in *Huff v. State,* where a criminal case experienced a two-year period of delay after the case "dropped off the court's docket." *Huff v. State,* 467 S.W.3d 11, 29 (Tex. App.—San Antonio 2015, pet. ref'd). The trial court attributed the delay to the district clerk's inaction. *Id.* On review, *Huff* concluded the delay appeared to be the result of negligence and not deliberate delay by the State. *Id.* Nonetheless, based on precedents, even negligent delay weighs against the State although not as heavily. *Id.* (citing *Gonzales,* 435 S.W.3d at 809–10; *see also Barker*, 407 U.S. at 531, 92 S.Ct. at 2192; *Zamorano*, 84 S.W.3d at 649).

To avoid all responsibility, *Huff* observed that the State needed to come forward with an explanation for why it took no action during the two-year period. *Id.* (citing *Shaw v. State,* 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo,* 96 S.W.3d at 314). Ultimately, *Huff* concluded that the delay occurred as the result of official "negligence," and that the reason-for-delay factor would therefore be held against the State, albeit lightly. *Id.*; *see also Barker,* 407 U.S. at 531, 92 S.Ct. at 2192) (recognizing that a "more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant").

Like our sister court in *Huff*, we are not persuaded here by the State's argument blaming the trial court for lack of activity. As explained in *Barker*, the State shoulders the burden of moving a case forward for prosecution. *Barker,* 407 U.S. at 527, 531, 92 S.Ct. at 2190, 2192. In light of this burden, it is not enough for the State to simply allege that it took all steps necessary to prosecute a case during a period of delay, and instead, it must present some evidence to support its

contention. *See generally Phillips v. State*, 650 S.W.2d 396, 400 (Tex. Crim. App. 1983). When the State fails to do so, and the record is silent with respect to the reasons for a delay, or it contains reasons that are insufficient to excuse the delay, it must be presumed that no valid reason for delay existed; and in such instances, the reason for the delay must be held against the State and not against than the defendant. *Id.* (delay in prosecuting case was held against the State where the State contended that it took all possible steps to bring a defendant to trial, but failed to provide evidence of what those steps were) (citing *Turner v. State*, 545 S.W.2d 133, 137-38 (Tex. Crim. App. 1976)); *see also Gonzales,* 435 S.W.3d at 809–10 (State's lack of explanation for not prosecuting case for six years, where it was aware of the defendant's home address but failed to contact him, constituted official negligence that weighed in defendant's favor).

Here, the appellate record, as scarce as it is, contains three orders summoning Gonzalez and her attorney to appear for status conferences while Gonzalez attended the court program. On review, we note these notices were either faxed to or signed by a prosecutor on behalf of the State. Given these notices, the State remained informed of Gonzalez's participation in the court's program. If the State believed Gonzalez was not progressing satisfactorily, it could have raised its concerns with the court and requested a transfer of her case back to the court's regular docket. In actuality, the State remained a participant throughout the duration of the program and for all time thereafter. Once the case became inactive, we cannot presume a valid reason for the State's lack of prosecution in the absence of an explanation. *See Shaw,* 117 S.W.3d at 889. Importantly, we note that the State raises no complaint about Gonzalez's completion of program requirements. Although much of the delay may be the result of official negligence; nonetheless, this delay is held against the State though not as heavily as it would have had the State's inaction been more

15

deliberate. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192; *Thompson v. State*, 983 S.W.2d 780, 784–85 (Tex. App.—El Paso 1998, pet. ref'd) (defendant was not at fault for failing to assert his speedy trial right during an eight-year period of time when his case disappeared from the trial court's docket and defendant's trial counsel mistakenly believed the case had been dismissed).

Accordingly, we attribute this approximate four-and-a-half-year delay from February 2011 to July 2015 to official negligence, and we therefore hold the reason-for-delay factor against the State, albeit not heavily.

**Return to Active Docket**

Gonzalez's case returned to the court's regular docket beginning with a mandatory status conference set for July 28, 2015. Shortly thereafter, on September 4, 2015, her attorney filed a motion to dismiss asserting a violation of her speedy trial rights. The trial court held its hearing denying the motion in August of 2016, and another two months passed before Gonzalez entered her guilty plea in October of 2016, resulting in a period of one year and three months of a period when the case returned to the active docket.

The delay in resolving the motion to dismiss appears to have been caused primarily by the fact that Gonzalez's original counsel accepted a position as a full-time magistrate and withdrew from her case in December of 2015. New counsel appeared with Gonzalez at a status hearing held on February 5, 2016. Given the change in representation, the delay that occurred from July 28, 2015 through February 5, 2016 is an approximate seven-month period that cannot be held against the State. *See, e.g., Halbert v. State*, 881 S.W.2d 121, 127 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (delay caused by change in defense counsel is not weighed against the State). Additional delays occurred thereafter in part because Gonzalez amended her motion twice

16

and the State exercised its right to file a response.  The State filed its response on July 28, 2016, and the court held its hearing on August 25, 2016.  Neither party appears to have unduly or intentionally delayed the proceedings during the period the case returned to the active docket.  *See Doggett*, 505 U.S. at 656, 112 S.Ct. at 2693 (delays caused when the State exercises its right to oppose a defendant's pretrial motions is "wholly justifiable").  Therefore, once the case returned to the active docket, we do not count the one year and three months of delay against either party and instead assign it a neutral weight.

In total, the only period of delay that we weigh against the State is the approximate four-and-a-half-year period of delay when Gonzalez's case was negligently allowed to remain on the mental health court docket in an inactive status.

*Assertion of the Right*

The next factor we consider is whether Gonzalez affirmatively asserted her right to a speedy trial, and the timing of any such request.  The failure of a defendant to assert her right to a speedy trial during a period of delay will generally make it more difficult to prove that she was denied her constitutional right, as a failure to make a timely demand serves as a strong indication that she did not actually want a speedy trial of the charge against her.  *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *Shaw*, 117 S.W.3d at 890.  A defendant's failure to assert speedy trial rights often indicates an intentional acquiescence in a delay, perhaps in the hopes of obtaining a tactical advantage or a dismissal of her case.  *Id*.

First, we conclude that Gonzalez had no reason to request a speedy trial during the first five and a half months before her case was transferred to the mental health court.  During that period, her case proceeded in an ordinary manner with pretrial settings and had been given a trial

17

setting of March 17, 2010. Second, after Gonzalez agreed to participate in the Mental Health Court Program, her successful participation in the program does not itself reflect that she had no interest in a speedy trial should charges remain unresolved after completion of her conditions. Instead, we conclude it simply reflects her willingness to actively participate in a diversionary program with an interdisciplinary team under court supervision. Given the Legislature's establishment of such programs for eligible defendants, we believe it would undermine the program's goal to penalize a defendant who succeeds in meeting all program requirements to suffer penalty for not simultaneously demanding a speedy trial while focused on her treatment. Therefore, we do not fault Gonzalez for not asserting her speedy trial rights during the one-year period in which she actively participated in program requirements. Lastly, we consider whether Gonzalez was required to assert her speedy trial rights during the four-and-a-half-year period that her case remained dormant after she completed the mental health program. Gonzalez argues that her failure to assert her speedy trial rights during this critical period should not be held against her because she was unaware that charges were pending against her during that time based on the misrepresentation made to her by the trial court's staff. We agree.

The idea that a defendant must assert her right to a speedy trial is based, at least impliedly, on the premise that the defendant was aware that charges were pending during the period of delay, and the defendant was aware of the need to assert those rights. *See Doggett,* 505 U.S. at 653, 112 S.Ct. at 2691 (stating that the petitioner's timely assertion of his right to a speedy trial turns, in large part, on whether the petitioner knew about the outstanding charges). Thus, when a defendant is not aware that charges have been filed, courts hold it would be illogical to impose a penalty for not asserting speedy trial rights during the period of unawareness. *See, e.g., Phillips*

18

*v. State*, 650 S.W.2d 396, 400 (Tex. Crim. App. 1983) (where defendant had no opportunity to assert his right, as he was unaware that he had been indicted, he obviously could not be "faulted for failing to assert a right he did not know he was entitled to"); *see also Gonzales v. State*, 435 S.W.3d 801, 812 (Tex. Crim. App. 2014) (where undisputed evidence in the record established that defendant had no knowledge that charges were filed against him in 2004, his failure to assert his speedy trial rights until he was arrested in 2010 was not held against him); *State v. Wei,* 447 S.W.3d 549, 555 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (where the undisputed evidence established that the defendant had no knowledge that charges were pending for over four years, his failure to assert his speedy trial rights during that time did not weigh against him); *Orand v. State*, 254 S.W.3d 560, 568 (Tex. App.—Fort Worth 2008, pet. ref'd) (record did not support an inference that the defendant knowingly waived his speedy trial rights where there was an eleven-year, eight-month delay in arresting him during which time he was unaware that an indictment had been filed against him).

Similarly, in cases where a defendant harbors a reasonable belief that the charges against her were dismissed, courts generally conclude that the defendant should not be penalized for failing to assert speedy trial rights during the period of delay in which the defendant harbored such belief. *See, e.g., State v. Sears,* No. 13-16-00513-CR, 2017 WL 3634061, at *3 (Tex. App.—Corpus Christi Aug. 24, 2017, no pet.) (mem. op., not designated for publication) (defendant was not responsible for asserting her speedy trial rights during period of delay in which she believed charges against her had been dismissed); *Thompson*, 983 S.W.2d at 784–85 (defendant was not at fault for failing to assert his speedy trial right during an eight-year period of time when his case

19

disappeared from the trial court's docket and defendant's trial counsel mistakenly believed the case had been dismissed).

Here, the State does not contest the assertion that Gonzalez had a good faith belief that the charges against her had been dismissed based on the representations made to her by a staff member of the trial court. Nevertheless, the State argues that even if Gonzalez had a legitimate, albeit mistaken, belief that her case had been dismissed, her trial attorney—who represented her throughout the mental health court proceedings—should have known that the charges against her had not been dismissed, and that a formal court order was required to accomplish that goal. The State contends that her attorney's failure to take any action in her case to move her case forward was a clear indication that he intentionally acquiesced in the delays that occurred, and that her attorney's failure to act "smacks of intentionally lying behind the log," and evidences he had "no desire" to obtain a speedy trial for his client.[5] The State further contends that this acquiescence should be held against Gonzalez.

In support of its argument, the State points to our holding in *Thompson* in which we held that a defendant's failure to assert his speedy trial rights could not be held against him where the defendant presented evidence that his case had "disappeared" from the trial court's docket for eight years, as well as evidence that his trial counsel mistakenly believed his client's case had been dismissed. *Thompson*, 983 S.W.2d at 785. The State finds it significant that unlike the situation in *Thompson*, there is no evidence in the present case to suggest that Gonzalez's trial counsel had

---

[5] The State claims that the trial court "noted" in its ruling that Gonzalez's attorney had intentionally acquiesced in the four-and-one-half-year delay when it made its ruling from the bench. This, however, is not an accurate representation of the trial court's statements. The trial court expressly stated that it did not blame trial counsel for the delays that occurred while the case was pending on the mental health court docket from 2011 to 2015, and that it only blamed trial counsel for filing a motion to dismiss after the trial court summoned Gonzalez back to court in July of 2015, rather than a motion for speedy trial.

20

a similar "mistaken belief" that his client's case had been dismissed being that her former attorney did not testify one way or the other. The State then argues that in the absence of such evidence, we should conclude that Gonzalez's attorney acquiesced in the delay, and that this acquiescence should be attributed to Gonzalez. We find this reasoning flawed for several reasons.

First, in *Thompson*, the fact that the defendant presented evidence that his trial counsel shared his mistaken belief that his case had been dismissed was merely a factor in our analysis, and we did not hold that it was a requirement in every case that a defendant must present such evidence to absolve herself of the need to otherwise assert her speedy trial rights. Further, we see no evidence in the record to suggest that Gonzalez's previous trial counsel intentionally acquiesced in the delay by failing to take any action while it remained inactive. At the hearing, trial counsel was not called as a witness, and neither party presented any evidence to indicate what trial counsel knew or did not know, whether he harbored a mistaken belief that Gonzalez's case had been dismissed, or, alternatively, whether he intentionally acquiesced in the delay. In addition, we find it significant that Gonzalez testified that she had no communication with her trial counsel about the status of her case from the time she was told her case had been dismissed, until she contacted him after receiving the court's notice in July of 2015, after which he filed a motion to dismiss on speedy trial grounds shortly after the court's conference. Given the fact that the State did not question Gonzalez's assertion that she completed the program successfully, it remains possible that trial counsel also believed in good faith that his client's case had been resolved.

The State contends that we should nevertheless find that trial counsel's negligent failure to assert his client's speedy trial rights should be held against Gonzalez. For this proposition, the State relies on *Vermont v. Brillon*, 556 U.S. 81, 90–91, 129 S.Ct. 1283, 1290–91, 173 L.Ed.2d 231

21

(2009). In *Brillon*, defense counsel requested extensions and continuances, and displayed an inability or unwillingness to move the case forward in the trial court. *Id*. at 92, 129 S.Ct. at 1291. The U.S. Supreme Court clarified that appointed counsel generally are not state actors for purposes of a speedy-trial claim despite being employed by a public defender's office. *Id.* (citing *Polk County v. Dodson*, 454 U.S. 312, 320-22, 102 S.Ct. 445, 450-52, 70 L.Ed.2d 509 (1981)). Thus, *Brillon* held that delays caused by assigned counsel are attributed to the defendant and not to the State despite counsel's employment by a governmental agency. *Id*.

Contrary to the State's argument here, *Brillion* did not discuss whether trial counsel's negligent failure to assert speedy trial rights during a period of inactivity should likewise be charged against the defendant. Thus, under the unique circumstances of this case, we decline to hold Gonzalez responsible for negligence, if any, on the part of her attorney in failing to assert her rights during the time her case remained inactive. *See, e.g., State v. Ritter*, 531 S.W.3d 366, 373–74 (Tex. App.—Texarkana 2017, no pet.) (where defendant blamed her failure to assert her speedy trial rights on the negligence of her two prior court-appointed attorneys, who did not communicate with her regularly, court found that her failure to assert her rights earlier was "mitigated by the negligence of her prior counsel"); *see also Sears,* 2017 WL 3634061, at \*3 (refusing to blame defendant for delays in asserting her speedy trial rights during period in which State was responsible for delay, and where the defendant's attorney had assured her that he would take care of the charges).

Accordingly, we conclude that Gonzalez's failure to assert her speedy trial rights during this critical period of delay—when she believed the case had been dismissed—should not be held against her.

22

**Filing a Motion to Dismiss does not Weigh Against Gonzalez**

And finally, the State argues that the fact that Gonzalez's attorney eventually filed a motion to dismiss her case, rather than a motion for a speedy trial, should be considered as evidence that neither he nor his client ever had a desire for a speedy trial and they were "intentionally lying behind the log," hoping that Gonzalez's case would be dismissed due to the passage of time. The State contends this factor should be held against Gonzalez as we weigh the *Barker* factors. We note this argument seems to have been the reason the trial court denied Gonzalez's motion, as the trial court also faulted her attorney for filing the motion to dismiss, rather than a motion for speedy trial, suggesting that this demonstrated a willingness by Gonzalez's trial attorney to "hide behind the ball" in seeking a dismissal rather than asking for a trial setting. We disagree.

Generally, when a defendant files a motion to dismiss rather than a motion for a speedy trial, this choice may undermine the defendant's claim that she did in fact want a speedy trial and would allow for a reasonable inference that the defendant simply wished for the case to be dismissed. *Zamorano*, 84 S.W.3d at 651 n.40 (noting that in general, a defendant who seeks a dismissal instead of a speedy trial weakens his case because it shows a desire for no trial rather than a speedy trial); *see also Cantu,* 253 S.W.3d at 283 ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."). However, there are some circumstances in which it may be appropriate for a defendant to file a motion to dismiss rather than a motion for speedy trial, particularly when so much time has passed that a defendant would no longer be able to effectively obtain a speedy trial, and where defense counsel may "legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly."

23

*Phillips*, 650 S.W.2d at 401 (seeking only dismissal will not necessarily result in a waiver of the claim in all cases). In such cases, the defendant may be justified in filing a motion to dismiss, rather than a motion for a speedy trial, as a "means of alerting the trial court and the State of the delay and appellant's lack of acquiescence to it, and not necessarily [as] an attempt to escape trial completely." *Zamorano,* 84 S.W.3d at 651 n.40.

Therefore, in cases in which the defendant was not responsible for a delay in prosecution and/or did not acquiesce in the delay, after sufficient time has passed, defendant's decision to file a motion to dismiss, rather than a speedy trial motion, does not cut against him or her in conducting a *Barker* analysis. *See Sears,* 2017 WL 3634061, at *4 (after a delay of four years and three months caused by the State, the defendant would not be faulted for filing a motion to dismiss rather than a motion for speedy trial). *Wei*, 447 S.W.3d at 555 (where it is undisputed that the defendant had no knowledge that charges were pending against him for over four years, the filing of a motion to dismiss does not weigh against him); *Ritter,* 531 S.W.3d at 374 (where there was a delay of over eleven years in prosecuting defendant's case, which presumptively prejudiced the defendant, requesting a dismissal of the indictment, rather than a trial, "did not necessarily indicate that [the defendant] never wanted a trial."); *State v. Smith,* 66 S.W.3d 483, 491 (Tex. App.—Tyler 2001, no pet.) (affirming speedy trial relief granted by trial court after a five-year delay in prosecuting defendant's case, even though the defendant never specifically requested a speedy trial, only a dismissal of the charges). The reasoning for this conclusion is simple: when sufficient time has passed, a defendant cannot be faulted for "not requesting what she likely would have never had— a speedy trial." *Sears,* 2017 WL 3634061, at *4.

In the present case, six years had passed between the time that Gonzalez was first charged and the time that her attorney filed a motion to dismiss the charge based on speedy trial grounds, and therefore counsel could have legitimately concluded that given the length of the delay, Gonzalez could no longer receive a speedy trial, and that she was instead entitled to dismissal of the charge against her. As Gonzalez was not responsible for the bulk of the delay and was presumptively prejudiced by the delay, we conclude that her attorney's decision to file a motion to dismiss, rather than a motion for speedy trial, does not undermine her constitutional claim under these circumstances.[6]

### *Prejudice Caused by the Delay*

We now turn to the fourth and final *Barker* factor, in which we consider whether Gonzalez was prejudiced by the delays in prosecuting her case. Prejudice must be assessed in light of the interests which the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Balderas v. State*, 517 S.W.3d 756, 772 (Tex. Crim. App. 2016), *cert. denied*, 137 S.Ct. 1207 (2017); *see also Thompson*, 983 S.W.2d at 785. The "possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence is the most serious interest that the right to speedy trial protects because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Orand v. State*, 254 S.W.3d 560, 569 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Doggett,* 505 U.S. at 654, 112

---

[6] We also note that after new counsel was appointed to represent Gonzalez, she filed both an amended motion to dismiss on speedy trial grounds, and at the same time, filed numerous pretrial motions preparing for trial. We find that this also weighs against the State's argument that Gonzalez never wished for a trial and that her only focus was on seeking a dismissal of her charges.

S.Ct at 2692); *see also Gonzales,* 435 S.W.3d at 812 (the third interest is the most important because the fairness of the criminal justice system is distorted when a defendant is unable to adequately prepare his defense).

In the present case, the first two factors do not support a finding of prejudice, as Gonzalez was not incarcerated during any of the periods of delay, and although she claimed to have suffered anxiety after her charges were reinstated, we cannot logically say she suffered anxiety or concern during the time she believed her charges had been dismissed. *See Gonzales*, 435 S.W.3d at 812 (defendant could have suffered little anxiety or concern where he did not know about indictment until he was arrested and did not spend time in jail prior to his arrest).

This leads us to consider the third and most important factor in our prejudice analysis, i.e., whether Gonzalez's ability to defend herself was impaired by the delay. The State correctly points out that Gonzalez did not present any evidence to suggest that her defense was impaired, such as by loss of any evidence or witnesses, the State therefore contends that she failed in her burden to establish prejudice. While it is true that Gonzalez failed to present any such evidence, our inquiry does not stop here.

As the Court of Criminal Appeals has noted, in some instances, a delay in bringing a criminal case to trial may be so excessive that it may be considered "presumptively prejudicial," thereby absolving the defendant of the initial burden of demonstrating prejudice. *See Gonzales*, 435 S.W.3d at 812 (citing *Doggett*, 505 U.S. at 655-56, 112 S.Ct. at 2692-93); *see also Wei*, 447 S.W.3d at 557. This is because an "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify." *Shaw*, 117 S.W.3d at 890 (citing *Doggett,* 505 U.S. at 655, 112 S.Ct. at 2693); *see also Balderas*, 517 S.W.3d at 772 (excessive

26

delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify). Although a defendant is not entitled to this presumption if he or she acquiesced in the delay, if no such acquiescence is found, a reviewing court may presume that a lengthy delay adversely affected the defendant's ability to defend herself. *Ritter*, 531 S.W.3d at 374-75 (citing *Balderas*, 517 S.W.3d at 772); *see generally Dragoo*, 96 S.W.3d at 315 (citing *Doggett*, 505 U.S. at 658, 112 S.Ct. at 2694) (a defendant who acquiesced in a delay is not entitled to the presumption of prejudice). If the presumption applies, the burden then shifts to the State to "persuasively rebut" the presumption of prejudice, i.e., to demonstrate that the defense was unimpaired by the delay, such as by establishing that no evidence was lost or impaired during the time of delay. *Gonzales*, 435 S.W.3d. at 814–15 (citing *U.S. v. Molina–Solorio*, 577 F.3d 300, 304 (5th Cir. 2009)).

In the present case, the State initially acknowledges that the seven-year delay in prosecuting Gonzalez's case was presumptively prejudicial and we agree. No argument was made that the case was extraordinarily complex or atypical. Various courts have held that delays of three years or longer are presumptively prejudicial, thereby shifting the burden to the State to persuasively rebut the presumption. *See U.S. v. Cardona*, 302 F.3d 494, 498 (5th Cir. 2002) (five-year delay); *Gonzales*, 435 S.W.3d at 815 (six-year delay); *Dragoo*, 96 S.W.3d at 315 (three-and-one-half-year delay); *State v. Mackenzie*, No. 13-16-00006-CR, 2017 WL 3306427, at *6 (Tex. App.—Corpus Christi Aug. 3, 2017, no pet.) (mem. op., not designated for publication) (four-year delay); *Sanchez v. State*, No. 08-15-00059-CR, 2016 WL 7449371, at *7 (Tex. App.—El Paso Dec. 28, 2016, no pet.) (not designated for publication) (almost seven-year delay); *Wei*, 447 S.W.3d at 557 (fifty-one-month delay).

As rebuttal, the State, solely argues that Gonzalez acquiesced in the delay of her case.   As set forth above, however, we have already concluded that Gonzalez did not acquiesce in the delay, and we therefore conclude that she was in fact entitled to the presumption.   Therefore, the burden shifted to the State to "persuasively rebut" the presumption of prejudice, such as by demonstrating that no evidence was lost or impaired during the time of the delay.   The State, however, failed to present any evidence regarding the merits of Gonzalez's case to demonstrate that her defense was not impaired, and we conclude that the State did not rebut the presumption of prejudice and the fourth *Barker* factor therefore weighs against the State.

### *Balancing the Factors*

The last step in a *Barker* analysis is a balancing of each factor's relative weight in light of the conduct of the parties.   *Cantu*, 253 S.W.3d at 281.   Here, however, we have found that all four factors weigh in favor of relief at least during the multi-year period of dormancy and no delay was shown as against defendant.   Therefore, we need not engage in any balancing exercise in this instance.   Accordingly, having found that there was a presumptively prejudicial delay in Gonzalez's case, a great amount of which was attributable to official negligence that is weighed against the State, and that Gonzalez did not acquiesce in the delay, we conclude that Gonzalez's constitutional right to a speedy trial was violated, and the trial court erred in denying her motion to dismiss.   Gonzalez's sole issue on appeal is sustained.

### CONCLUSION

We reverse Appellant's conviction and render judgment dismissing the DWI case against her.

GINA M. PALAFOX, Justice

28

November 20, 2018

Before McClure, C.J., Rodriguez, and Palafox, JJ.
Rodriguez, J., dissenting

(Do Not Publish)