**Albert E. BRANSCUM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–87–0088–CR.**

Court of Appeals of Texas,
Amarillo.

May 17, 1988.

---

John Mann, Amarillo, for appellant.

Harold L. Comer, Asst. Dist. Atty., Pampa, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This appeal requires us to determine whether appellant, who was convicted by a jury on March 12, 1987, of the October 8, 1964, murder of his wife and sentenced to five years in the penitentiary, has been denied his right to a speedy trial. Concluding that he has, we reverse the judgment and dismiss the prosecution.

The unchallenged State's evidence was that appellant fatally shot his wife, then shot himself. His complaint in this Court is addressed only to the speedy trial issue. He contends, by two points of error, that the twenty-two year delay between occurrence and trial denied his rights under (1) the United States and Texas Constitutions and (2) the Texas Speedy Trial Act. Both speedy trial claims were unsuccessfully urged in the trial court in pre-trial motions to dismiss the indictment.

Appellant was indicted for the offense on December 4, 1964, in the 31st District Court. Sometime later that month, appellant, who had required hospital care for several weeks because of his gunshot wounds, posted bond, and went to Oklahoma. No action was taken on the case for the duration of the then district attorney's tenure in office. Kathy Miller, appellant's daughter, testified that she and another of appellant's children resided with appellant in 1967 in Oklahoma. She testified that appellant, who mentally had been "fine", was in a rehabilitation center in that state from 1968 to 1970, and during that time, there was marked improvement in his physical condition.

The current district attorney, Guy Hardin, who first assumed office in 1969, testified that he first learned of appellant's case in 1972 at a 31st District Court docket call, when the presiding judge inquired about it. Hardin was unable to find an office file on the case. He and the trial judge were later informed by the sheriff, who was sheriff at the time of the occurrence, and still holds that office, that appellant was "a mental vegetable" in an Oklahoma nursing home.

Because of "the general consensus" that the case could not be tried, Hardin acquiesced in its dismissal, although he never filed a formal motion, and the trial judge dismissed the case for lack of prosecution on June 9, 1972. Prosecutorial pursuit of the case was revived in 1986, however, when a member of the deceased's family asked about the status of the case and reported to the district attorney's office that appellant was working in Oklahoma.

District attorney's investigator Mike Hartsock testified that the victim's relative made the inquiry on January 31, 1986. Hartsock ultimately found the office file on the case in a box of inactive files stored in a closet. In August 1986 Hartsock met with appellant in Oklahoma, and observed that he functioned normally and was operating a salvage yard with his son. He learned from his investigation that appellant, during and since his convalescence, was communicative and had no cognative problems. The case was thereafter presented to a Gray County grand jury, and the indictment upon which appellant was convicted was filed in the 223rd District Court on September 18, 1986.

Appellant presented evidence that the lengthy delay between offense and trial precluded any use of an insanity defense because of the impossibility of retrospectively establishing through expert testimony his mental condition twenty-two years previously. The State countered the evidence of prejudice by proof, through the testimony of co-workers, that appellant behaved normally near the time of the offense.

An accused person in Texas is guaranteed two constitutional speedy trial rights: a Federal Constitutional right guaranteed by the Sixth Amendment, made applicable to the states through the Fourteenth Amendment, and a Texas Constitutional right guaranteed by Article 1, Section 10. *Ostoja v. State*, 631 S.W.2d 165, 167 (Tex.Crim.App. [Panel Op.] 1982). Additionally, until recently, an accused had the statutory right to have his cause dismissed if there has been a delay beyond the applicable time requirement of the Texas Speedy Trial Act.

Tex.Code Crim.Proc.Ann. art. 32A.02 (Vernon Pamp.Supp.1988).

■ We will first, and summarily, dispose of appellant's assertion, by his second point, that a dismissal is mandated by the Texas Speedy Trial Act. That Act was declared unconstitutional in its entirety in *Meshell v. State*, 739 S.W.2d 246 (Tex.Crim. App.1987). Consequently, appellant cannot obtain relief under it in this case. Point of error two is overruled.

■ We turn, then, to the pivotal issue of whether appellant's constitutional rights have been abridged by the twenty-two year delay between the occurrence and his trial. The Sixth Amendment's guarantee of an accused's right to a speedy trial, which is substantively duplicated in Article 1, Section 10 of the Texas Constitution, protects a fundamental right and is obligatory. U.S. Const. amend. XIV, § 1; *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967).

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court identified four factors which play, albeit not exclusively, in the determination of whether an accused has been denied his constitutional speedy trial right. These are: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his speedy trial right; and (4) the prejudice to the accused. None of these factors has a talismanic quality, and each, and other pertinent factors, must be weighed in a difficult and sensitive balancing process. 407 U.S. at 533, 92 S.Ct. at 2193. We will, then, collate the enumerated considerations with the evidence in this case.

■ The threshold consideration is the length of the delay, for no further inquiry need be made unless it can be said that the delay is of a degree sufficient to give superficial validity to the speedy trial claim. 407 U.S. at 530, 92 S.Ct. at 2192. Here, it could scarcely be questioned that a twenty-two year delay between the time of the offense and the initial trial setting is presumptively prejudicial. *See Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App.1985);

*Jamerson v. Estelle,* 666 F.2d 241, 243 (5th Cir.1982).

The critical consideration, in our view, is the second factor, the reason for the delay. The record indicates, and the State concedes, that the delay resulted solely from the prosecution's failure to monitor appellant's circumstances. However understandable that may be, given appellant's medical condition immediately after the occurrence, information about his status from which the State could have pursued the prosecution was readily available from the outset. After a moderately long convalescence period, appellant resumed a normal life with his children in the Oklahoma community to which he had moved. For whatever administrative reason, the case simply languished, and ultimately was forgotten. The inescapable deduction is that, had not inquiry been made in 1986, the prosecution never would have been revived after its 1972 dismissal.

 The primary burden is on the prosecution and the courts to insure that defendants are speedily brought to trial. *Turner v. State,* 504 S.W.2d 843, 845 (Tex. Crim.App.1974). Negligence in bringing the case to trial, however innocent, must militate against the State. *Prescott v. State,* 696 S.W.2d 693, 695 (Tex.App.—Fort Worth 1985, no pet.). In this case we find no countervailing circumstances to justify the delay.

There are, then, two remaining speedy trial claim considerations identified in *Barker v. Wingo:* appellant's assertion of his speedy trial right and the prejudice to him. In the usual case a defendant's failure to assert his speedy trial right greatly weakens his later claim of a speedy trial deprivation. *Barker v. Wingo,* 407 U.S. at 532, 92 S.Ct. at 2193. However, even if this principle was applicable while the first indictment was viable, certainly appellant was under no such burden in the fourteen-year period between the first indictment's 1972 dismissal and the reindictment of him in 1986. Appellant was entitled, under the circumstances, to conclude that the State had abandoned its prosecution of him.

The prejudice consideration was propounded in *Barker v. Wingo* in recognition of three speedy trial interests: to prevent oppressive pretrial incarceration, to minimize the anxiety and concern of the accused, and to limit the possibility that the defense will be impaired. 407 U.S. at 532, 92 S.Ct. at 2193. The State argues that appellant was unharmed because he never was incarcerated, there was no evidence he experienced anxiety, and the asserted impairment by the lapse of time of his possible insanity defense is illusory, given the predominant evidence that he behaved rationally near the time of the offense.

In considering the prejudice factor, the reviewing court will not require proof of actual prejudice, but only some showing that the delay has been prejudicial. *Phillips v. State,* 650 S.W.2d 396, 401 (Tex. Crim.App. [Panel Op.] 1983). This is so because of an accused's right to have charges promptly exposed and to meet them when the case is fresh. *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). We regard this delay occasioned simply by the inapt consignment of the case into limbo as *ipso facto* prejudicial, because the appellant was entitled to have the case resolved one way or another within a reasonable time.

To hold, as the State would have us hold, that appellant had not been deprived of his Sixth Amendment right to a speedy trial would be to deny that aspect of the Sixth Amendment any vitality. If the constitutional guarantee of a speedy trial is ever to be vindicated, it must be under these facts.

Ordering the dismissal of a murder prosecution in which the evidence of guilt is overwhelming is not an enjoyable task. The constitutional principles upon which this action is predicated are more important than this case, however, and we will apply them as we think they were meant to be applied. The balancing of the interest involved must, as always, weigh in favor of constitutional sanctity.*

---

* We commend Assistant District Attorney Harold L. Comer for his vigorous and competent pursuit of this case, once it was placed in his hands.

The judgment is reversed and the prosecution is ordered dismissed.

He bears no fault for the inability of the State to sustain the conviction.