The STATE of Texas, Appellant,

v.

EMPAK, INC., Appellee.

No. B14–93–00986–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 1, 1994.

Rehearing Overruled Dec. 29, 1994.

Discretionary Review Refused
March 22, 1995.

---

James E. Smith, Houston, for appellant.

Roger A. Haseman, Houston, for appellee.

Before SEARS, LEE and BARRON, JJ.

## OPINION

BARRON, Justice.

### I. *Nature of the Case*

This is a State's appeal from the dismissal of an information against a corporation based on federal and state constitutional speedy trial grounds. The State asserts the dismissal on speedy trial grounds was error because corporations have no constitutional right to a speedy trial, but alternatively, if corporations have a speedy trial right, it was not violated in this case. We affirm.

### II. *Facts*

Empak operates a hazardous waste treatment, storage, and disposal facility. The Harris County Pollution Control Department ("HCPCD") sent Empak three notices of alleged water pollution violations ("NOVs") shortly after each offense occurred (i.e. in February and April 1990 and in February 1991). Empak responded to each notice within ten days.

On April 29, 1991, Empak was charged in a three-count information with misdemeanor offenses of water pollution. It was not until over two years later, on or about August 10, 1993, that Empak was served with summons to appear. The case was set for arraignment on September 13, 1993, and Empak appeared through its attorney of record. The arraignment was reset to October 13, 1993.

On September 29 Empak filed a motion to dismiss the information based on the State's violation of Empak's federal and state constitutional speedy trial rights. Alternatively, Empak demanded a speedy trial.

On October 13, at the arraignment and hearing on the motion to dismiss, Empak's Corporate Secretary's affidavit testimony was that CT Corporation (811 Dallas Avenue, Houston, Texas 77002) was Empak's registered agent for service of process, and that this information had been on file with the Texas Secretary of State since well before 1988. Thomas Land, Empak's Environmental Specialist, appeared in person and by

affidavit. He testified that Empak's customers were generally major chemical companies, who routinely reviewed Empak's environmental compliance status and requested information about pending environmental criminal actions to assess their business relationship with Empak. Despite the notices of violations ("NOVs"), Land did not tell potential customers that Empak was subject to any ongoing environmental enforcement actions. Most NOVs do not result in enforcement actions. At no time did HCPCD inform Empak that Empak would be the subject of any civil or criminal enforcement regarding the alleged violations. Land had concluded there were no enforcement actions pending against Empak for those alleged violations due to the lapse of time between the NOVs and service of summons. After about two years from the time Empak received the NOVs had passed, Empak closed its files relating to those alleged violations, assuming the no enforcement action was pending.

The State did not file a response to the motion to dismiss or offer testimony at the hearing. The trial court granted Empak's motion to dismiss for violation of the speedy trial right under both federal and state constitutions.

### III. *Analysis*

The State contends the trial court erred in granting the motion to dismiss of defendant, Empak, Inc. ("Empak"), based upon a violation of its right to a speedy trial because (1) "the state and federal constitutional provisions concerning the right to a speedy trial do not apply to corporate defendants"; and (2) if a corporation has a constitutional speedy trial right, Empak's speedy trial rights were not violated in this case.

### A. Corporations Have a Constitutional Speedy Trial Right.

▆▆▆ "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed...." U.S. CONST. amend. VI. "In all criminal prosecutions the accused shall have a speedy public trial by an impar-

tial jury." TEX. CONST. art. I, § 10; TEX. CODE CRIM.PROC.ANN. art. 1.05 (Vernon 1977); *Crowder v. State*, 812 S.W.2d 63, 66 (Tex. App.—Houston [14th Dist.] 1991, no pet.). Although Texas and United States constitutional speedy trial rights are independent, Texas Courts look to the Federal Courts in determining state constitutional rights. *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim.App.1992) (en banc), cert. denied, —— U.S. ——, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992).

The State contends corporations lack a speedy trial right because historically it is a "purely personal" right limited to protecting individuals. *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 776–82 and fn. 14, 98 S.Ct. 1407, 1416–18 and fn. 14, 55 L.Ed.2d 707 (1978) (*See also: United States v. White*, 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944) and *Super X Drugs of Texas, Inc. v. State*, 505 S.W.2d 333, 338 (Tex.App.—Houston [14th Dist.] 1974, no pet.) (corporations cannot claim the "personal" privilege against self-incrimination, under federal and Texas law respectively). In other words the right to a speedy trial does not apply to corporations since a corporation does not have the same need as the individual in interests which the right is designed to protect: minimizing the possibility of lengthy incarceration (i.e. the incarceration factor) and shortening the disruption of life caused by arrest and the presence of unresolved criminal charges (i.e. the anxiety factor). *United States v. Gouveia*, 467 U.S. 180, 188–90, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984). According to the State, only the factors of incarceration and anxiety should be considered in determining the right to a speedy trial, and since these do not apply to corporations "... the Speedy Trial Clause cannot apply at all to corporations!".

The *Barker* balancing test, used to determine whether speedy trial rights have been violated, has been applied to corporations. *United States v. Sears, Roebuck and Co.*, 677 F.Supp. 1042, 1048 (C.D.Cal.), *rev'd on other grounds*, 877 F.2d 734 (9th Cir.1989). U.S. CONST. amend. VI; 18 U.S.C.A. § 3161, *et seq.* (West 1985 & Supp.1994). In discussing the legislative history of the federal speedy

trial act, which does not expressly include or exclude corporations, the district court opined:

> These problems [caused by delayed prosecution], which vex a corporation *just as much as they vex an individual,* include being forced to exist under "a cloud of anxiety, suspicion, and hostility"; a "draining of resources"; subjection to "public and commercial obliquoy"; restraint on liberty, and loss of contracts, customers and public good will. (emphasis added).

*Sears,* 677 F.Supp. at 1046.

Thus, it has been recognized that a corporation faced with pending criminal charges is vulnerable to many of the interests that have been recognized historically as being protected by the speedy trial right, and which the State characterizes as "purely personal".

We have been cited to no cases, and we have found none, holding that corporations are not, as a general rule, entitled to speedy trial protection. To the contrary, several courts have analyzed the speedy trial right in the context of a corporate defendant. *See, e.g., United States v. Litton Systems, Inc.,* 722 F.2d 264 (5th Cir.1984); *United States v. Rivera Constr. Co.,* 863 F.2d 293, 295 (3rd Cir.1988); *United States v. Stein,* 456 F.2d 844 (2nd Cir.1972), *cert. denied,* 408 U.S. 922, 92 S.Ct. 2489, 33 L.Ed.2d 333 (1972); *People v. Diamond,* 147 A.D.2d 708, 538 N.Y.S.2d 319 (1989); *People v. Crawford Distrib. Co.,* 78 Ill.2d 70, 34 Ill.Dec. 296, 397 N.E.2d 1362 (1979); *People v. Slender Wrap, Inc.,* 36 Colo.App. 11, 536 P.2d 850 (1975).

Extended government delay in prosecuting entitles a defendant to relief based on the right to a speedy trial, even absent the "purely personal" factors of pretrial incarceration and anxiety. In *Doggett,* the defendant was indicted while he was out of the country but the government was negligent in failing to note his return, so nearly six years passed between the time he returned to the country and his arrest. *Doggett v. United States,* —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Thus, the accused was not subjected to pretrial incarceration and he had no anxiety and concern as to charges of which he was unaware. Even in the absence of proof of particularized prejudice with the only

proof being the length of delay itself, the Court held that "when, the government's negligence * * * causes delay six times as long as that generally sufficient to trigger judicial review [i.e. six years], and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief". *Id.* at ——, 112 S.Ct. at 2694.

Likewise, in Texas the speedy trial right has not been limited to situations where "purely personal" interests are affected, such where incarcerated individuals are aware of pending criminal charges. *Phillips v. State,* 650 S.W.2d 396 (Tex.Crim.App.1983) (dismissal on speedy trial grounds although defendant was unaware of the charges for over a year and for which incarceration was impossible because he was already incarcerated on unrelated charges); *Branscum v. State,* 750 S.W.2d 892 (Tex.App.—Amarillo 1988, no pet.) (dismissal on speedy trial grounds of 1987 conviction, where alleged murder occurred in 1964, indictment in 1964 was dismissed in 1972 then appellant was reindicted in 1986).

The State argues that in analyzing the right to a speedy trial under the sixth amendment, the court should not even consider the factor of actual or possible prejudice to an accused's defense arising from the delay. *Doggett,* —— U.S. at ———–——, 112 S.Ct. at 2696–97 (Thomas, J., dissenting). The State concedes this is not the majority view of the United States Supreme Court, which rejected the argument that the remedy for delay should be solely under the fifth amendment's Due Process Clause. *Id.* at ——, 112 S.Ct. at 2686. The Due Process Clauses of the fifth and fourteenth amendments protect an accused from unnecessary *pre-accusation* delay that causes substantial prejudice to a fair trial: "There is ... no need to press the Sixth Amendment into service to guard against the mere possibility that *pre-accusation* delays will prejudice the defense in a criminal case since statutes of limitation already perform that function." *United States v. Marion,* 404 U.S. 307, 323, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). In

contrast, here Empak's complaint is of *post-information* delay.

Likewise, *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) and *United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), do not support the State's argument that it is solely the Due Process Clause which provides Empak's remedy rather than the speedy trial right. In *MacDonald*, charges against the defendant were dismissed then later the defendant was reindicted. The delay between the dismissal and the reindictment for the same offense did not raise speedy trial concerns, because the defendant was not an "accused" during that time interval: no Sixth Amendment right to a speedy trial arises until charges are pending. *Id.* 456 U.S. at 7, 102 S.Ct. at 1501–02. Likewise, in *Loud Hawk*, the Sixth Amendment right to a speedy trial did not provide the remedy for delay between the time an indictment was dismissed and the government's appeal was concluded, since the defendant was no longer subject to restraint. 474 U.S. 302, 106 S.Ct. 648.

■ Corporations have a speedy trial right under federal and Texas constitutions. In Texas, a speedy trial right is also assured by TEX.CODE CRIM.PROC.ANN. art. 1.05 (Vernon 1977), and the Code of Criminal Procedure expressly applies to corporations. *Id.* art. 17A.01. Empak argues that without a speedy trial right, the State could file charges against a corporation and delay service indefinitely in dereliction of legislatively promulgated statute of limitations. Here, Empak was charged in April of 1991, but was not served until twenty eight (28) months later, in August 1993. In addition to relieving the defendant of unnecessary consequences associated with being criminally accused, the right to a speedy trial exists to promote society's interest in promptly disposing of criminal charges to enhance the administration of justice. *Barker v. Wingo*, 407 U.S. 514, 520–21, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972). Point of error number one is overruled.

## B. The Balancing Test for Denial of the Speedy Trial Right.

■ A balancing test, in which the conduct of the prosecution and the defendant are weighed, is used to determine whether an accused has been denied his *federal* constitutional speedy trial right. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191–92. The *Barker* test is also used to determine whether a defendant has been denied his *state* constitutional speedy trial right. *Harris*, 827 S.W.2d at 956. The *Barker* balancing factors to decide whether a trial has been unreasonably delayed include, but are not limited to: (1) length of the delay; (2) the government's justification for the delay; (3) whether the accused asserted his speedy trial right; and (4) prejudice to the accused caused by the delay. 407 U.S. at 531, 92 S.Ct. at 2192.

■ A court deciding speedy trial issues reviews with deference the trial court's determination that the government was negligent in pursuing accused. *Doggett*, — U.S. at ——, 112 S.Ct. at 2691.

### 1. Length of Delay

■ First we determine if the delay was *prima facie* unreasonable under the circumstances, warranting further inquiry into the other *Barker* factors. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191–92; *Harris*, 827 S.W.2d at 956. The length of delay is measured from the time of arrest or formal accusation. *Marion*, 404 U.S. at 313, 92 S.Ct. at 459; *Harris*, 827 S.W.2d at 956. Most delays of eight months or longer are considered presumptively unreasonable and prejudicial. *Id.; Doggett*, — U.S. at ——, fn. 1, 112 S.Ct. at 2691, fn. 1.

Empak was charged by information on April 29, 1991. It was not until August of 1993—some 28 months after the information was filed—that Empak was served with summons. This was 29 months after the most recent alleged offense and 42 months after the oldest. The delay in this case was thus beyond the eight month presumptively prejudicial timemark. *Id.*

■ Delay beyond the limitations period is prejudicial. The filing of an information tolls the statute of limitations. *Vasquez*

*v. State,* 557 S.W.2d 779, 784 (Tex.Crim.App. 1977). The limitations period for misdemeanor offenses is 24 months. TEX.CODE CRIM.PROC.ANN. art. 12.02 (Vernon 1977). Thus, Empak was not notified it was being prosecuted until well after the statute of limitations would otherwise have expired, which is itself unreasonable and prejudicial.

We find the delay in this case to be presumptively unreasonable so as to trigger further analysis under *Barker.*

### 2. Reason for Delay

It is the State's burden to establish an excuse for the delay. *State v. Hernandez,* 830 S.W.2d 631, 634 (Tex.App.—San Antonio 1992, no pet.).

The State offered no evidence, much less any affirmative justification for the delay. *Id.* Empak presented evidence that the identity of its registered agent for service of process had been on file with the Texas Secretary of State since 1988. Empak could have easily been served by mailing a copy of the information and summons to CT Corporation. At oral argument, the Assistant District Attorney stated, in substance, that the summons had not been served because the case had just fallen between the cracks.

The State's negligence, however innocent, militates against the State. *Branscum,* 750 S.W.2d at 895. When the government's negligence causes delay and when presumed prejudice is uncontroverted, the defendant should be afforded relief on speedy trial grounds. *Doggett,* —— U.S. at ——, 112 S.Ct. at 2693. This factor weighs in Empak's favor.

### 3. The Accused's Assertion of its Speedy Trial Right

"[An] appellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial." *Harris,* 827 S.W.2d at 957. Following Empak's service with summons in August of 1993, Empak promptly demanded a speedy trial in the alternative to its motion to dismiss for the speedy trial violation. Empak could not have been expected to demand a speedy trial prior to being notified of the prosecution by service of summons. This factor favors Empak.

### 4. Prejudice

In determining prejudice, three types of prejudice from delay in trial are considered: (1) preventing oppressive pretrial incarceration; (2) minimizing an accused's anxiety and concern awaiting trial; and (3) limiting the possibility the defense will be impaired. *Id.* In the case of a corporate defendant, only the second and third interests are implicated.

#### a. Corporate Concern

These problems [caused by delayed prosecution], which vex a corporation just as much as they vex an individual, include being forced to exist under "a cloud of anxiety, suspicion, and hostility"; a "draining of resources"; subjection to "public and commercial obliquoy"; restraint on liberty, and loss of contracts, customers and public good will.

*Sears,* 677 F.Supp. at 1046.

Environmental Specialist Land's testimony was that to retain business, Empak needed to be in compliance with environmental laws and regulations. Given the lapse in time between the NOVs and service of summons, Empak had not advised clients of any pending enforcement actions.

The charges against Empak were a matter of public record, available to clients seeking to verify Empak's environmental compliance. A client or potential client could have learned of these charges which could have affected Empak's business. This is a matter of corporate concern, subjecting Empak to suspicion, public and commercial disrepute, and the loss of customers and contracts previously negotiated on the basis there were no pending enforcement actions.

#### b. Prejudice to the Accused's Defense

"Once triggered by ... official accusation ... the speedy trial inquiry must weigh the effect of delay on the accused's defense just as it has to weigh any other form of prejudice that *Barker* recognized." *Id.* —— U.S. at ——, 112 S.Ct. at 2692. A

showing of actual prejudice is not required. Empak has the burden to show at least some potential prejudice from the delay. *Phillips,* 650 S.W.2d at 401.

Empak was not served with the information until 28 months after the most recent alleged offense and 42 months after the oldest. The filing of the information tolled the 24–month limitations period applicable to misdemeanors. *Vasquez,* 557 S.W.2d at 784. The delayed service deprived Empak of the reasonable notice inherent in statutes of limitations. "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Marion,* 404 U.S. at 323, 92 S.Ct. at 465, quoting *Toussie v. United States,* 397 U.S. 112, 114–15, 90 S.Ct. 858, 859–60, 25 L.Ed.2d 156 (1970). Empak was deprived of the right of having the charges exposed within the limitations period and to meeting them when the case was fresh. *Branscum,* 750 S.W.2d at 895; *see also Phillips v. State,* 650 S.W.2d at 403 (13–month delay in notification of charges held prejudicial to defense).

Empak put on evidence of some potential prejudice to its business and to the defense from the delay. Due to the passage of time, Empak represented that no enforcement actions were pending, and closed its files on the alleged offenses. Closing files is some evidence of prejudice to the defense. Further evidence of prejudice to the defense, on which the State offered no controverting or supplementary testimony, was testimony that an HCPCD investigator who may have been involved in investigating Empak was no longer with the agency.

Although the evidence established only minimal potential prejudice to Empak's defense from the delay, the State offered no controverting testimony. Further, the delay in notice to Empak of the charges exceeded the statute of limitations. Most importantly, "... excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify." *Doggett,* —— U.S. at ——, 112 S.Ct. at 2693. We therefore find that the trial court did not abuse its discretion in the

implied finding of some potential prejudice to Empak's defense occasioned by the delay. Thus, the factor of prejudice to the defense weighs in Empak's favor.

### 5. Summary

Balancing the *Barker* factors can be a difficult and sensitive process because none of the four factors alone are either necessary or sufficient to a finding of deprivation of the right to a speedy trial. *Crowder,* 812 S.W.2d at 68. However, we cannot say the trial court abused its discretion in this case in finding that Empak's right to a speedy trial was violated. Here, the 29–42 month delay between notices of violations and service, and the 28 month delay between being charged and being served, was presumptively unreasonable; the State offered no justification for the delay; Empak timely demanded a speedy trial in the alternative to dismissal; and evidence of some potential prejudice was uncontroverted by the State.

Point of error number two is overruled.

### IV. *Conclusion*

Finding no error, we affirm.