# NO. 12-20-00067-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DENITA VOLUNTINE JIMERSON,* *APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIALDISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Denita Voluntine Jimerson appeals her conviction for possession of a controlled substance with intent to deliver in an amount of four grams or more but less than two hundred grams. She raises five issues on appeal. We reverse and render judgment dismissing the case.

## BACKGROUND

On November 26, 2014, Overton Police Department Officer James Hollister was dispatched to a call, originating from an anonymous tip, warning of a reckless driver in a black four-door pickup truck. Shortly thereafter, Officer Hollister observed a black four-door truck driving slowly on the shoulder with flashing hazard lights. Officer Hollister was initially concerned that the driver was possibly intoxicated, and he observed what he believed to be an illegal white light used to illuminate the cargo area of the truck.[1] Officer Hollister activated his emergency lights as the truck had already begun to pull into the driveway of a residence.

The driver, later identified as Appellant, exited the truck and approached Officer Hollister. During their interaction, Officer Hollister dispelled any belief that Appellant was intoxicated. Officer Hollister asked for consent to search the vehicle, and after initially

---

[1] Officer Hollister later admitted at a suppression hearing that he did not observe Appellant drive recklessly.

equivocating, Appellant refused. However, he arrested Appellant for driving without a valid license. He also arrested the passenger, who provided a false identity and had active warrants for his arrest.

During the stop, it was revealed that the residence belonged to Appellant's mother. Moreover, several of Appellant's relatives arrived at the scene during her detention, including her sister and adult son. Officer Hollister determined that Appellant's son had a valid driver's license and no warrants for his arrest. Appellant's sister assisted with placing her in the back of Hollister's patrol unit. Appellant told her sister that she needed her shoes from the truck. Officer Hollister told Appellant that he would retrieve her shoes. Appellant told Officer Hollister that she did not know where they were located inside the truck, to which the officer replied, "the vehicle is going to be inventoried anyways, so it is not a problem." Appellant immediately stated that she did not give him permission to search the truck. Officer Hollister then told Appellant he understood and that he did not ask for her consent.

Thereafter, from the back of the patrol car, Appellant stated that she needed her medication, and her sister offered to retrieve it from Appellant's purse, which was located inside the truck. Officer Hollister refused to allow access and reasserted that the vehicle would be inventoried and impounded. He began his inventory search, including the contents of the purse, and discovered what was later determined to be methamphetamine. Appellant yelled that the purse did not belong to her. Officer Hollister transported Appellant to the Smith County Jail. Appellant bonded out of jail in December 2014.

Appellant was indicted for this offense on April 9, 2015. While in a state jail facility for an unrelated offense in another county, Appellant filed a motion for bench warrant on December 16, 2015. In the motion, Appellant requested that the case be set for trial and she be transported to Smith County to provide testimony in this case. In 2016, the trial court granted the motion and set the matter for trial. However, the bench warrant went unserved because Appellant had been released from the state jail facility, even though Smith County had an "active hold" on her at the time.[2]

After her release from the state jail facility, Appellant was arrested and sentenced to imprisonment on another unrelated offense in another county. In August 2018, Appellant was

---

[2] The purpose of the "hold" is to continue detention of the person pending transfer to another jurisdiction to deal with a separate criminal case.

released on parole. At the time, Smith County had a second active hold on her that also went unheeded by the authorities. Furthermore, Appellant was paroled to Smith County, and she successfully transferred her parole to Tarrant County without anyone noticing the holds or the pending criminal investigation. According to Appellant, she asked the parole officer about the pending case, whom she claimed was unable to discover it.

While on parole, Appellant was rearrested for this case on July 16, 2019, and subsequently transported to Smith County. On September 11, Appellant filed a letter asking the court for a speedy trial and referencing her earlier 2015 motion for bench warrant. She also stated that she filed several other letters seeking a speedy trial from 2016 through 2018 and requested copies of them. Those letters do not appear in the record. She recited that family members repeatedly called for court dates. Appellant filed a similar letter with the Smith County District Clerk's office on September 16.

Appellant filed a motion to suppress evidence, which the trial court denied after a hearing on December 5. On January 13, 2020, the trial court subsequently heard evidence concerning Appellant's alleged violations of her right to a speedy trial and denied the motion. The trial court issued findings of fact and conclusions of law on both motions. Appellant subsequently agreed to the State's plea offer, which the trial court accepted. Accordingly, on February 18, 2020, the trial court found Appellant guilty of the offense and sentenced her to fifteen years of imprisonment. This appeal followed.

## SPEEDY TRIAL

In her first issue, Appellant contends that the trial court erred by denying her right to a speedy trial.

### Standard of Review and Applicable Law

In assessing whether a defendant was deprived of her right to a speedy trial, we consider the length of the delay, the reason for the delay, the defendant's assertion of her right, and any prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101 (1972). However, before we engage in an analysis of each *Barker* factor, the defendant must first make a showing that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Gonzalez v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (citing *Doggett v. U.S.*, 505 U.S. 647, 651–52, 112 S.

Ct. 2682, 2686, 120 L. Ed. 2d 520 (1992)). "Presumptive prejudice" simply marks the point in which courts deem the delay unreasonable enough to trigger further inquiry. *See id.* (citing *State v. Munoz*, 991 S.W.2d 818, 821–22 (Tex. Crim. App. 1999)). The length of the delay is measured from the time the defendant was arrested or formally accused. *State v. Thomas*, 453 S.W.3d 1, 4 (Tex. App.—Dallas 2014, no pet.) (citing *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003)). In general, delay approaching one year is sufficient to trigger a speedy trial inquiry. *Doggett*, 505 U.S. at 652 n.1, 112 S. Ct. at 2686.

The essential ingredient of the Sixth Amendment's speedy trial guarantee is "orderly expedition and not mere speed." *U.S. v. Marion*, 404 U.S. 307, 313, 92 S. Ct. 455, 459, 30 L. Ed. 2d 468 (1971) (Sixth Amendment appears to guarantee criminal defendant that government will move with dispatch appropriate to assure early and proper disposition of charges). The balancing test in *Barker* requires a case by case weighing of the conduct of both the prosecution and the defendant. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192. No single factor is a necessary or sufficient condition to find a speedy trial violation. *Id.*, 407 U.S. at 533, 92 S. Ct. at 2193; *State v. Wei*, 447 S.W.3d 549, 553 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Instead, the related factors must be considered together along with any other relevant circumstances, and as no factor possesses "talismanic qualities," courts must engage "in a difficult and sensitive balancing process" in each individual case. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). When the State's negligence causes "extraordinary" delay, and when the presumption of prejudice is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted by the State, the defendant is entitled to relief. *Doggett*, 505 U.S. at 658, 112 S. Ct. at 2694.

In reviewing a trial court's decision on a speedy trial claim, we apply a bifurcated standard of review. *See Munoz*, 991 S.W.2d at 821. We review factual issues for an abuse of discretion and legal issues de novo. *Id.* Review of the individual *Barker* factors necessarily involves factual determinations and legal conclusions, but the balancing test as a whole is "a purely legal question." *Cantu*, 253 S.W.3d at 282. Here, because the trial court denied Appellant's motion, we presume that it resolved any disputed fact issues in the State's favor and defer to these implied findings of fact that the record supports. *See Munoz*, 991 S.W.2d at 821.

4

**Threshold Showing of Delay**

Appellant was arrested on November 26, 2014, and indicted on April 9, 2015. She was not rearrested and brought to Smith County until July 16, 2019, or nearly fifty-six months from the date of her arrest. The trial court heard her motion to suppress on December 5, 2019, her motion for speedy trial on January 13, 2020, and accepted her guilty plea and sentenced her on February 18, 2020. These three events occurred over five years after Appellant's initial arrest, and nearly five years after her indictment. Appellant has satisfied the threshold showing of delay, and the State admits that this factor weighs heavily against it. *See Doggett*, 505 U.S. at 652 n.1, 112 S. Ct. at 2686 (stating that delay approaching one year is generally sufficient to trigger speedy trial inquiry); *Gonzalez*, 435 S.W.3d at 808. Therefore, we must analyze the remaining *Barker* factors and balance them. *See Gonzalez*, 435 S.W.3d at 808.

**Reason for the Delay**

If a presumptively prejudicial delay has occurred, the State bears the initial burden of justifying the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994). Different weights are assigned to different reasons. *Munoz*, 991 S.W.2d at 822. A deliberate attempt to delay a trial, for example, is weighed heavily against the State, while more neutral reasons, such as negligence or overcrowded dockets, are still weighed against the State but less heavily. *Id.* Bad faith is not a prerequisite to a speedy trial violation; official negligence can suffice. *See Doggett*, 505 U.S. at 656–57, 112 S. Ct. at 2693. If the record is silent regarding the reason for the delay, it weighs against the State but not heavily, because courts do not presume that the State has tried to prejudice the defense. *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003); *Zamorano v. State*, 84 S.W.3d 643, 649-50 (Tex. Crim. App. 2002).

Although a defendant must assert the right to a speedy trial, she has no duty to bring herself to trial, because that burden and responsibility remains with the State. *See Cantu*, 253 S.W.3d at 282. Similarly, upon the demand of a federal prisoner facing state charges, "Texas ha[s] a constitutional duty to make a diligent, good-faith effort to bring him before the [state] court for trial." *Smith v. Hooey*, 393 U.S. 374, 381–83, 89 S. Ct. 575, 578–79, 21 L. Ed. 2d 607 (1969) (observing that upon the prisoner's motion for a speedy trial, the State could have issued a writ of habeas corpus *ad prosequendum* for the Federal Bureau of Prisons to make him available for prosecution); *but cf. Hopper v. State*, 520 S.W.3d 915, 926-27 (Tex. Crim. App. 2017) (holding that *Smith* was not on point when appellant made no demand for speedy trial in

5

Texas case while he was incarcerated out-of-state, particularly when **Smith** preceded the Interstate Agreement on Detainers (IAD)).

Here, the trial court did not make any express findings concerning whether the State intentionally or negligently delayed the prosecution of this case. The State admits in its brief that it abandoned an enhancement paragraph and recommended the minimum sentence for two reasons: (1) the case was old; and (2) there were issues getting Appellant back to Smith County. The State recognized that this "gesture . . . could reasonably be interpreted as an admission that it was negligent in bringing the case to trial." The State continued in its brief:

> From the record, it appears as though this case simply fell through the cracks: (1) seemingly, no one noticed that Smith County had active holds on [Appellant], either when she was released from a state jail facility or when she was paroled from her prison sentence; and (2) she successfully transferred her parole from Smith County to Tarrant County without raising any flags.

Appellant claimed that she asked the Smith County parole officer whether there were any charges against her, and the officer was unable to discover any pending charges. The trial court did not make a finding on this issue. In any event, the evidence is that Smith County parole allowed her to transfer her parole from Smith County to Tarrant County. It is the State's responsibility to locate Appellant and bring the matter to trial. *See **Cantu***, 253 S.W.3d at 282. The State did not intentionally delay the case, but there were numerous acts of negligence by the State that compounded the delay. *See **Gonzales***, 435 S.W.3d at 810 (holding that State's unexplained six-year delay when it knew defendant's location, yet negligently failed to contact him, compounded defendant's presumptive prejudice over time).

Accordingly, as the State acknowledges in its brief, this **Barker** factor weighs heavily against it. *See **State v. Ritter***, 531 S.W.3d 366, 372-73 (Tex. App.—Texarkana 2017, no pet.) (holding extended inactivity on case and State's explanation that case was relatively unimportant weighed against it in speedy trial analysis); ***State v. Jones***, 168 S.W.3d 339, 347-48 (Tex. App.—Dallas 2005, pet. ref'd) (failing to execute the capias/warrant for almost two years weighs against State); *see also **State v. Marks***, No. 02-16-00434-CR, 2017 WL 6947901, at \*4-5 (Tex. App.—Fort Worth Oct. 19, 2017, no pet.) (mem. op., not designated for publication) (holding speedy trial rights violated when State failed to bring defendant, who was federal prison inmate, to state court on *ad prosequendum* writ, which functions similarly to bench warrant at state level, and several signed requests for bench warrants went unheeded).

**Assertion of the Right to a Speedy Trial**

The trial court found that Appellant "sent one letter to Smith County in December of 2015 requesting to be benched back, but never requested a speedy trial," and that "no formal motion for speedy trial has ever been filed by [Appellant] or her attorney." The trial court also concluded that she "failed to show a desire for a trial and only seeks a dismissal." The State argues that Appellant never asserted her right to a speedy trial.

We first note that a formal motion entitled "Motion for Speedy Trial" or other similar moniker is not necessarily required to assert the right to a speedy trial, and it may be asserted in other ways, as long as it is unambiguous. *See Ussery v. State*, 596 S.W.3d 277, 287-88 (Tex. App.—Houston [1st Dist.] 2019, no pet.). Appellant sent the December 2015 pro se "motion for bench warrant" via certified mail. The motion is part of the record, and we are not free to ignore it. Moreover, given the total lengthy delay in bringing this case to its conclusion, Appellant filed this motion in a matter of months after her indictment, a factor that weighs in her favor. *See, e.g., State v. Empak, Inc.*, 889 S.W.2d 618, 624 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (assertion of right factor favored defendant where defendant promptly demanded speedy trial in alternative to motion to dismiss). Additionally, in contrast to the trial court's finding, Appellant never sought dismissal of the action in her motion or otherwise, which also weighs in her favor. *See Hopper*, 520 S.W.3d at 924 (stating defendant's assertion of speedy trial right (or her failure to assert it) is entitled to strong evidentiary weight in determining whether defendant is being deprived of right); *Cantu*, 253 S.W.3d at 282 (noting that filing for dismissal instead of speedy trial will generally weaken claim because it shows desire to have no trial instead of speedy one).

Rather, Appellant specifically requested that she be transported to the court in Smith County so that she "may give testimony." In the prayer section of the motion, she asked that the court grant the motion and that she be transported "to the hearing of this Cause." Appellant dictated in her attached proposed order that her "request for a hearing" be "(granted/denied)," that "said cause is set for hearing on ____ day of ____," and further ordering that she be transported "to this county for said trial." *See Zamorano*, 84 S.W.3d at 651-52, n.42 (noting that "once [defendant] had clearly asserted his right to a speedy trial, he should have been given one."). Appellant included a certificate of service certifying that a true and correct copy of the motion for bench warrant, along with the proposed order had been forwarded to the Smith

7

County prosecutor. The trial court also indicated on its docket sheet that it forward Appellant's motion to the State.

In contrast to some cases where pro se requests for a speedy trial are ignored when the defendant is represented by counsel, who does not adopt the defendant's motion at the time of the filing, the record does not clearly show that Appellant was represented by counsel in this case at the time that she filed her pro se motion for bench warrant. *Cf. **Ussery***, 596 S.W.3d at 288 (holding although defendant asserted right to speedy trial, it did not weigh heavily against State, because there was no evidence that trial court was aware of motions or ruled on them, defendant was represented by counsel who represented to State that he did not intend to adopt the motions, but later filed motion requesting dismissal after case pending more than three years); ***Porter v. State***, 540 S.W.3d 178, 183 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (refusing to consider pro se motions for speedy trial when defendant was represented by counsel when he filed them and counsel did not file corresponding motions, trial court did not rule on or consider the motions, defendant did not file them while he represented himself and brought it to court's attention, did not set a hearing on motions, and he sought dismissal and was responsible for or agreed to most of delay).

After Appellant was indicted, the bail bondsman filed an affidavit and proposed order to revoke her bond, which recited that "a copy of this affidavit has been sent certified mail to the principal's attorney if [s]he has one," but the trial court never ruled on it. The State filed various discovery documents alleging that it served opposing counsel, but no counsel was identified. Moreover, at that point in time, there was not an appearance of counsel, an affidavit of indigency, or any document appointing counsel for Appellant. The trial court's docket sheet recites that there was a scheduling order on May 12, 2015, but the order is not in the record. In contrast to cases like ***Ussery*** and ***Porter***, the court's findings of fact and conclusions of law indicate that it was aware of Appellant's pro se motion for bench warrant. The court noted in the docket sheet that it forwarded a copy of Appellant's motion to the State on December 28, 2015. In fact, the next event that occurred in the case after Appellant filed her motion was that the trial court granted the request for a bench warrant on October 12, 2016, and issued a notice informing the parties of a trial setting on October 31, 2016.[3]

---

[3] The trial court's notice of trial setting contains the first reference to the identity and appointment of Appellant's trial counsel.

However, the bench warrant went unfulfilled and Appellant was not brought to Smith County.[4]  Appellant testified at the hearing that she continued to send letters requesting a trial in 2016 through 2018.  But those letters are not in the record.  No further activity occurred until Appellant was rearrested on July 16, 2019.  She then filed two letters, which are contained in the record, reciting that only her 2015 motion for a bench warrant was in the record, and she requested copies of the other letters that she sent in 2016 through 2018.  The trial court found though that she filed only her 2015 motion for bench warrant, and that it did not contain a request for a speedy trial.  Implicitly then, the trial court disbelieved her testimony regarding the 2016 through 2018 letters, an implied finding to which we must defer.  *See Munoz*, 991 S.W.2d at 821.  But as we concluded above, the record does not confirm the findings of fact and conclusions of law that her 2015 motion did not request a speedy trial and that she sought only a dismissal.  Appellant unambiguously notified the court relatively soon after her indictment in 2015 that she wished to be transported to Smith County to provide testimony and that the matter be set for trial, which the trial court considered and granted.  Accordingly, we hold that the third factor weighs in Appellant's favor.

**Prejudice**

We analyze the final ***Barker*** factor, prejudice, in light of the three interests that the right to a speedy-trial serves: prevention of oppressive pretrial incarceration; minimization of the accused's anxiety and concern; and reduction of the possibility that the defense will be impaired by the passage of time.  ***Gonzales***, 435 S.W.3d at 812.  Of these, the third interest is the most important one.  ***Id.***

Appellant explained at the hearing that she suffered stress and anxiety as a result of not resolving this case.  She testified that she was on parole at the time she was rearrested for this case in 2019.  She stated that she had obtained employment, purchased a home, and complied with all her parole requirements, including refraining from using alcohol or drugs, and attending alcoholics anonymous and narcotics anonymous meetings, among other things.  Appellant also explained that her mother became gravely ill while awaiting the resolution of this case.  She testified that her efforts were derailed when she was rearrested on this charge, resulting in the loss of her job, house, and car.  Independent of this alleged prejudice, Appellant contends that

---

[4] The trial court indicated on its docket sheet that it was notified that Appellant was no longer an inmate at the state jail facility.

she is absolved of proving prejudice due to the excessive presumptively prejudicial delay. We agree.

Generally, "[a] defendant has the burden to make some showing of prejudice, but a showing of actual prejudice is not required." *Balderas v. State*, 517 S.W.3d 756, 772 (Tex. Crim. App. 2016) (citing *Munoz*, 991 S.W.2d at 826). Further "[e]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify." *Id.* (citing *Shaw*, 117 S.W.3d at 890). "In such instances, the defendant is absolved from the requirement to demonstrate prejudice." *Gonzales*, 435 S.W.3d at 812 (citing *Doggett*, 505 U.S. at 655–56, 112 S. Ct. 2686). A delay of approximately five years caused by the State's negligence has been found to absolve the defendant from demonstrating prejudice. *See Doggett*, 505 U.S. at 655–57, 112 S. Ct. 2686 (eight-year delay); *United States v. Cardona*, 302 F.3d 494, 498 (5th Cir. 2002) (five-year delay); *Gonzales*, 435 S.W.3d at 813–15 (six-year delay); *Wei*, 447 S.W.3d at 556-57 (citing *Gonzalez* and holding that State failed to vitiate presumption of prejudice by proving defendant's acquiescence to fifty-one month delay).[5] In these instances, the reviewing court presumes that the lengthy delay adversely affected the defendant's ability to defend herself. *Balderas*, 517 S.W.3d at 772 (citing *Shaw*, 117 S.W.3d at 890). The burden then shifts to the State to rebut the presumption of prejudice by showing that the defendant acquiesced to the delay. *Gonzales*, 435 S.W.3d at 815.

The trial court found that Appellant did not provide any evidence of prejudice or harm. The State, in its brief, does not specifically attempt to demonstrate that Appellant suffered no prejudice or that she acquiesced in the delay. Rather, it contends that there is no evidence that the delay triggered anxiety or concern "beyond the level normally associated with being charged with a felony." As such, its argument continues, "the court could have reasonably concluded that [Appellant] failed to demonstrate actual prejudice," and thus, "the fourth and final *Barker* factor weighs against finding a violation of her right to a speedy trial." In such cases, when the State does not attempt to show that Appellant was not prejudiced by the delay, the prejudice factor weighs against it. *See, e.g., Ritter*, 531 S.W.3d at 374-75 (holding State failed to show Appellant

---

[5] The Court also has presumed prejudice in cases in which the length of delay was significantly less than the delay that Appellant has experienced. *See Shaw v. State*, 117 S.W.3d 883, 889-90 (Tex. Crim. App. 2003) (stating that "we must presume that the lengthy delay here did adversely affect appellant's ability to defend himself" in case involving delay of just over three years); *Zamorano v. State*, 84 S.W.3d 643, 654 (Tex. Crim. App. 2002) (stating that "the length of delay itself"—just under three years between arrest and hearing on speedy-trial motion and almost four years between arrest and plea hearing—"supports an inference of actual prejudice").

acquiesced to delay or rebut excessive delay in presumptively prejudicial case where defendant is absolved from showing prejudice); *Wei*, 447 S.W.3d at 556-57 (same); *see also Sanchez v. State*, No. 01-17-00751-CR, 2018 WL 6377140, at *4 (Tex. App.—Houston [1st Dist.] Dec. 6, 2018, no pet.) (mem. op., not designated for publication) (same); *Gonzalez v. State*, No. 08-16-00286-CR, 2018 WL 6061652, at *13 (Tex. App.—El Paso Nov. 20, 2018, no pet.) (op., not designated for publication) (same).

The State continued in its brief, mentioning "as an aside," Appellant received the benefit of time served, along with the State's agreement to abandon one of the punishment enhancement paragraphs and a recommendation of the minimum sentence of fifteen years of imprisonment. However, as the Court of Criminal Appeals has stated, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify." *Shaw*, 117 S.W.3d at 890 (citing *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2693); *see also Balderas*, 517 S.W.3d at 772 (excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or identify). Also, in making this assessment, we are to consider the factors and all other relevant circumstances. *Cantu*, 253 S.W.3d at 281.

There are other relevant circumstances raised in this case that affect the defense and provide an explanation for such a concession by the State. For example, Officer Hollister decided to impound the vehicle after Appellant denied her consent to search the truck, even though it was parked at her mother's home, and Appellant's adult son, who held a valid driver's license, was present at the scene during Officer Hollister's investigation. Appellant's sister was also present. Appellant's initial arrest was for driving without a valid license, a relatively minor offense that would likely result in her quick release from the county jail. In other words, there were real issues concerning the propriety of the arrest and ultimate case against Appellant. *See, e.g., Stephen v. State*, 677 S.W.2d 42, 44 n.1 (Tex. Crim. App. 1984) (strongly suggesting that impoundment is impermissible if there is another person present with a valid driver's license who is able and willing to assume responsibility for the vehicle and arrestee agrees to this person's taking possession); *Smith v. State*, 759 S.W.2d 163, 167 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (impoundment impermissible where suspect arrested next to his vehicle legally parked in private parking lot); *Rodriquez v. State*, 641 S.W.2d 955, 958 (Tex. App.—Amarillo 1982, no pet.) (impoundment improper when defendant's car parked at home of

11

brother-in-law and no evidence showed it needed to be impounded for reasons independent of his arrest).

**Balancing the *Barker* Factors and Conclusion**

Now we must consider and weigh the aforementioned ***Barker*** factors. The defendant's burden of proof on the latter two factors "varies inversely" with the State's degree of culpability for the delay, and thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial. ***Cantu***, 253 S.W.3d at 280–81. As the State admits, the first two factors weigh heavily against it. The third factor also weighs against it. Although Appellant did not prove she suffered actual prejudice, she was absolved from this burden. The State failed to demonstrate that Appellant was not prejudiced, especially since there are other issues with the viability of this case.

In summary, Appellant requested a speedy trial not long after her arrest and indictment that went unheeded by numerous acts of the State's negligence. In her 2015 motion, she sought to be brought to Smith County to provide testimony at trial and that a hearing be set on the matter. The trial court granted the motion, but it went unfulfilled until July 16, 2019. Appellant did not request a dismissal and never sought a continuance or other delay in the resolution of this matter. Each case must be analyzed on its own facts. *See **Cantu***, 253 S.W.3d at 281. On this record, we must conclude that Appellant's right to a speedy trial has been violated. *See **Gonzales***, 435 S.W.3d at 815; ***Wei***, 447 S.W.3d at 558; ***Ritter***, 531 S.W.3d at 375.

Accordingly, "the only possible remedy is dismissal of the prosecution." *See **Dragoo***, 96 S.W.3d at 313 (citing ***Strunk v. United States***, 412 U.S. 434, 440, 93 S. Ct. 2260, 2263-64, 37 L. Ed. 2d 56 (1973)). Therefore, Appellant's first issue is sustained.

**REMAINING ISSUES**

Appellant contends in her second, third, and fourth issues that the methamphetamine should be suppressed because Officer Hollister lacked reasonable suspicion to stop her vehicle, his decision to seize, inventory, and impound her vehicle was improper, and he lacked a basis to conduct the warrantless search of the vehicle without her consent following her arrest. Appellant contends in her fifth issue that the "time payment" fee assessed in the trial court's bill of costs is unconstitutional and that we should delete the fee assessed as court costs. These issues would at

12

most, if successful, result in a remand for a new trial or modification of the judgment.  *See, e.g., Schmidt v. State*, 659 S.W.2d 420, 421-22 (Tex. Crim. App. 1983) (suppression results in remand, not dismissal); *Sturdivant v. State*, 445 S.W.3d 435, 443 (Tex. App.–Houston [1st Dist.] 2014, pet. ref'd) (proper remedy when trial court erroneously includes amounts as court costs is to modify judgment to delete erroneous amounts).  We award the defendant the greatest possible relief.  *See* TEX. R. APP. P. 43.3.  We have sustained Appellant's first issue on her speedy trial violation, which is dispositive and results in a dismissal of the case.  *See **Dragoo***, 96 S.W.3d at 313 (citing ***Strunk***, 412 U.S. at 440, 93 S. Ct. at 2263-64).  Accordingly, these issues are not necessary to the disposition of this appeal and we need not examine them.  *See* TEX. R. APP. P. 47.1.

## DISPOSITION

We have sustained Appellant's first issue, which is dispositive.  Therefore, we ***reverse*** the trial court's judgment and ***render*** judgment ***dismissing*** the case against Appellant.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 21, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 21, 2021**

**NO. 12-20-00067-CR**

**DENITA VOLUNTINE JIMERSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-0397-15)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **reversed** and judgment **rendered dismissing** the case in accordance with the opinion of this Court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*